**UNITED STATES of America**

v.

**Louis Anthony ZAMBRANO, Orlando Michael Cerminara, Robert Charles Lucas,**

**Louis Anthony Zambrano, Appellant.**

**No. 17528.**

United States Court of Appeals, Third Circuit.

Argued Jan. 8, 1970.

Decided Feb. 17, 1970.

Anthony V. DeCello, DeCello, Bua & Manifesto, Pittsburgh, Pa., for appellant.

John H. Bingler, Jr., Asst. U. S. Atty., Pittsburgh, Pa. (Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, VAN DUSEN and ALDISERT, Circuit Judges.

OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Louis Zambrano appeals from a judgment and commitment entered October 16, 1968, after a jury verdict of guilty was returned in the Federal District Court on a one-count indictment charging him with possession of goods known to have been stolen from interstate commerce.[1] A judgment of acquittal was directed as to his co-defendant, Robert Lucas, at the conclusion of the Government's case and co-defendant Michael Cerminara was found not guilty by the jury. Before trial, the defendants stipulated that the 1066 cases of Nestle's chocolate mentioned in the indictment had indeed been the subject of an interstate theft, thus essentially reducing the issue at trial to the nature of their knowledge of the chocolate's origin.

The Government's first witness, a retail merchant from whom the goods were finally recovered, testified that he had purchased the chocolate from the appellant in the middle of March 1968, after being approached by him in late February of the same year. He stated that the appellant explained his willingness to sell the chocolate at less than regular wholesale price by remarking that it had come from a bankrupt vending machine company in New York. The chocolate was delivered by the appellant in a truck he borrowed from the witness for that purpose. The Government presented several other merchants who testified to contacts with the appellant or persons who, further testimony established, were acting at the appellant's behest during which an offer was made to sell choco-

---

1. 18 U.S.C. § 659 (1964).

late at below wholesale price in exchange for cash or a certified check.

Two agents of the Federal Bureau of Investigation also testified. One stated that he interviewed the appellant and was told by him that, while registered at a motel in New York, he had been approached by a man offering to sell some Nestle's chocolate. This individual, the appellant explained, took the appellant to a warehouse in Brooklyn where he was allowed to examine the goods. The sale was allegedly consummated on a second trip to New York. Testimony was then introduced to show that appellant's name did not appear on the motel registers where he claimed to have stayed on the dates involved and that there was no warehouse at the Brooklyn location.[2] A second agent testified to a meeting he had with the appellant and defendant Cerminara during which he pretended to be a prospective buyer for the chocolate. He related a conversation he had had with Cerminara shortly after the appellant left them in which Cerminara said, "I am a fool for taking part in the handling of this hot chocolate."[3]

At the conclusion of the Government's case, appellant's counsel stated to the court that he intended to put on no evidence. The defendant Cerminara then took the stand in his own behalf in an effort to explain his conversation with the second agent. He testified that he made his remarks after receiving a telephone call from a friend, who told him to avoid having anything to do with the chocolate since it was stolen, which conversation he repeated to the appellant out of hearing of the agent. Cerminara

went on to relate that he had originally been approached by the appellant's uncle with a proposition to help the appellant sell the chocolate and that after he relayed to appellant the telephone message which he had received, the appellant denied that the goods were stolen but left Cerminara and the agent immediately and did not return, even though promising to do so.

After the Government had cross-examined Cerminara, the following colloquy took place:

"[Government counsel] : No further questions.

"The Court: Anything more?

"[Appellant's counsel] : I have just one question, your Honor.

"The Court: How do you examine? When you examine him, you make him your witness. You weren't going to offer any testimony. He is not subject to cross-examination by you. If you wish to ask him questions on that basis, all right.

"[Appellant's counsel] : That is all right, your Honor. I will forego the question."

On this appeal it is alleged that the failure of the trial judge to permit defense counsel to cross-examine a codefendant was prejudicial error. We agree and reverse for this reason.

Neither the appellant nor the Government has been able to indicate with certainty what it was that prompted the above ruling by the trial court. The court may have been thinking of the practice in some courts to require counsel for a co-defendant to cross-examine

2. Although there was other evidence of appellant's guilty knowledge, such as the failure of appellant to get a receipt for the amounts be paid for the chocolate, the storage of the goods in appellant's home garage, the refusal of the sellers acting for appellant to give his name until a sale had been consummated, etc., the evidence against appellant on this issue, independent of Cerminara's testimony, was not "overwhelming." Cf. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

3. Also, Cerminara told Zambrano when he first introduced the second agent to him at the beginning of this conversation, that "Mike [the agent] is O. K. I have determined this through good people." As pointed out below, appellant never had an opportunity, through cross-examination of Cerminara, to make clear to the jury his version of such statements, his denial of their accuracy, and/or his absence when the statements were made.

before the Government does. For whatever reason the ruling was made, however, it is clear that it interfered with one of appellant's most basic procedural rights—the right to cross-examine the witnesses against him. See United States v. Fontana, 231 F.2d 807 (3rd Cir. 1956); cf. United States ex rel. Gerchman v. Maroney, 355 F.2d 302, 308 (3rd Cir. 1966). In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968),[4] the Court held that since a defendant had a right to cross-examine a co-defendant, it was reversible error to admit evidence of a co-defendant's confession where that co-defendant did not take the stand and subject himself to such cross-examination. As the Supreme Court indicated in Brookhart v. Janis, 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966):

> "In this Court respondent admits that:
>
> " '[I]f there was here a denial of cross-examination without waiver, it would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'
>
> "This concession is properly made."

 We cannot agree with the Government's contention that the last above-quoted remark by appellant's counsel constituted a waiver of the right to cross-examine or acquiescence in the ruling of the trial court. Rather, the record supports the conclusion that counsel for appellant decided to forego the question rather than make the co-defendant Cerminara his witness as the court would have required.

Because of the foregoing, it is not necessary for us to decide whether the failure of the trial judge to give a requested charge stating that the appellant had a constitutional right not to take the stand to testify, see Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14

L.Ed.2d 106 (1965), is such plain error, see F.R.Crim.P. 52(b), as to require reversal despite the failure of appellant's counsel to call it to the court's attention at the end of its charge, see F.R.Crim. P. 30.

The judgment and commitment of the District Court will be reversed and the case remanded for further proceedings consistent with this opinion.

4. In Roberts v. Russell, 392 U.S. 293, 294, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100 (1968), the Court said:

"The retroactivity of the holding in *Bruton* is therefore required; the error

'went to the basis of fair hearing and trial because the procedural apparatus never assured the [petitioner] a fair determination' of his guilt or innocence."