UNITED STATES of America, Appellee,

v.

John DWYER and John Dobranski, Defendants-Appellants.

Nos. 1124, 1255 Dockets 76–1108, 76–1254.

United States Court of Appeals, Second Circuit.

Argued June 7, 1976.

Decided July 26, 1976.

Milton Diamond, Highland Park, N. J., for defendant-appellant Dwyer.

William L. Boyan, Lawrenceville, N. J., for defendant-appellant Dobranski.

Allan Levine, Asst. U. S. Atty., S. D. N. Y., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., on the brief, John C. Sabetta, Asst. U. S. Atty., New York City, of Counsel), for appellee.

Before KAUFMAN, Chief Judge, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

On December 23, 1975, following a seven day jury trial before Judge Kevin T. Duffy in the Southern District of New York, appellants were found guilty of transferring firearms in violation of 26 U.S.C. §§ 5811, 5812, 5861(e), possessing firearms in violation of 26 U.S.C. § 5861(d) and conspiring to violate the aforementioned laws. Because we believe that the trial judge's exclusion of evidence critical to appellant Dwyer's defense constituted an abuse of discretion under Rule 403 of the Federal Rules of Evidence, we reverse his conviction and remand for a new trial. Because this ruling in no way prejudiced appellant Dobranski and his additional claims of error are without merit, we affirm his conviction.

The Government proved that Dwyer sold a German and a Russian machine gun on

September 1, 1974 to Joseph Kelly, a Special Agent of the Bureau of Alcohol, Tobacco and Firearms, posing undercover as a gun collector. Agent Kelly testified that he also negotiated for the purchase from Dwyer of two additional firearms, a 44 magnum and a short barrelled rifle, but that this purchase was not consummated because of the October 5, 1974 arrest of the defendants.

Instead of contesting the Government's proof, Dwyer chose to defend on grounds of insanity. Led by Dwyer's father, a large number of defendant's family and friends took the stand and testified how defendant, surrounded by a family of war heroes and unable to fulfill his father's expectations of what a "real man" ought to be, had developed an obsessive attachment to military hardware. So consuming was this compulsion that Dwyer, a thirty-year old male who lived with his parents, gave up dating girls because his limited budget would not permit both a social life and the cost of his weaponry which, at the time of trial, was voluminous enough to completely fill two or three pickup trucks.

■ On Friday, December 19, Dwyer's counsel called Dr. Robert London to the stand with the apparent intent of using him as his sole psychiatric witness. However, the doctor, testifying for the first time as an expert and unfamiliar with legal terminology, did not make a satisfactory witness. Although he testified that Dwyer had a "schizoid personality", a "singular involvement in a particular hobby which had become more a life style than a hobby" and "would lack sufficient ability to conform his behavior to the law" in his dealing with military equipment, Dr. London would not state that defendant suffered from a men-

tal disease or defect, preferring to label the problem a "personality disorder". Under settled law in this Circuit, this testimony was insufficient to establish an insanity defense. *See United States v. Freeman,* 357 F.2d 606 (2d Cir. 1966); *United States v. Currier,* 405 F.2d 1039 (2d Cir.), *cert. denied,* 395 U.S. 914, 89 S.Ct. 1761, 23 L.Ed.2d 228 (1969); *United States v. Bright,* 517 F.2d 584 (2d Cir. 1975); A.L.I. Model Penal Code § 4.01 (Proposed Official Draft 1962).[1]

Recognizing the inadequacy of Dr. London's testimony, defense counsel thereupon requested permission to call a second psychiatrist, Dr. James O'Connell.[2] Unfortunately, counsel's request came as a surprise, not only to Judge Duffy and the prosecution, but to Dr. O'Connell as well. Accordingly, defense counsel was unable to immediately contact his proposed witness. Because Dr. Stanley Portnow, the Government's psychiatrist who was scheduled to testify in rebuttal at 2 o'clock that afternoon, intended to leave on a trip immediately thereafter the prosecution objected to any delay in the trial. Reminding counsel that Christmas was quickly approaching, Judge Duffy called a recess to enable defense counsel to again attempt to contact Dr. O'Connell and get him to court within "half an hour". Defense counsel returned to the courtroom following the recess to announce that Dr. O'Connell would not be available to testify until the following Monday, December 22. Advising counsel for both sides that his current inclination was to refuse Dr. O'Connell permission to testify, the judge promised, nevertheless, to think about it over the weekend and directed that the witness appear in court on Monday morning.

Subject to the trial court's anticipated Monday ruling, the defense rested, and the

---

1. Under the so-called *Freeman* test, "a person is not responsible for criminal conduct if at the time of such conduct *as a result of mental disease or defect* he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." *United States v. Freeman,* 357 F.2d 606, 622 (2d Cir. 1966) (emphasis supplied).

2. It is clear from an examination of the record that the request was made before defense had rested. Accordingly, the government's recitation of authority for the proposition that a trial judge has broad discretion in refusing to "reopen" a defendant's case is inapposite.

Government called Dr. Portnow to the stand. He testified that Dwyer was suffering from neither a mental disease or defect and that, on the dates of the offenses alleged, Dwyer understood the wrongfulness of his conduct and retained the ability to conform that conduct to the requirements of the law.

On December 22, Dr. O'Connell appeared in court. Upon being informed by defense counsel that the doctor had treated defendant in the past, Judge Duffy announced that he would permit him to testify. At this point, the prosecution objected and requested that Dr. O'Connell first be subjected to a voir dire in the absence of the jury as to "his competency to testify". Judge Duffy assented to this suggestion and placed the psychiatrist on the stand for this limited purpose. Although defendant's offer of proof indicated that Dr. O'Connell would supply the medical testimony that was lacking, the prosecution sought to establish during its voir dire that Dr. O'Connell's unavailability the previous Friday resulted from defense counsel's negligence, and that the doctor's testimony had been improperly tainted by a weekend discussion of the case with defense counsel. At the conclusion of its examination, the Government moved to preclude Dr. O'Connell from testifying, stressing the prejudice that would result from Dr. Portnow's absence and reiterating the negligence and taint arguments put forth during the voir dire.

Following the Government's argument, Judge Duffy retracted his earlier decision and announced:

> I don't think it is fair for Dr. O'Connell to testify under the circumstances, I am not going to let him testify in front of the jury.

At this point, defense counsel advised the court that he believed this ruling to be reversible error and requested that, for the benefit of the Court of Appeals, the judge state the reasons for his decision. Replying that the reasons were "quite obvious", Judge Duffy refused. Not satisfied, defense counsel repeated his request the following day. Again Judge Duffy refused, admonishing counsel that he was "running a courtroom, not a classroom." Although stating that he found the doctor's credibility to be "just about zero" and commenting that "the Government could have done a number on him", the judge assured defense counsel that lack of credibility was not the basis of his decision to exclude the testimony, noting that "there are lots of other reasons". In spite of defense counsel's continued urging, however, the district judge remained steadfast in his refusal to list these "other reasons" for the record.

Rule 403 of the Federal Rules of Evidence permits a trial judge to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." In the balancing of probative value against unfair prejudice required by Rule 403, the trial judge has wide discretion, *United States v. Cowsen*, 530 F.2d 734, 738 (7th Cir.), *cert. denied,* —— U.S. ——, 96 S.Ct. 2227, 48 L.Ed.2d 831 (1976); *United States v. Moore,* 522 F.2d 1068, 1079 (9th Cir. 1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637, (1976), and the ruling that he makes will not be disturbed unless such discretion has been clearly abused, *United States v. Wixom,* 529 F.2d 217, 220 (8th Cir. 1976); *United States v. Fairchild,* 526 F.2d 185, 189 (7th Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976).

There can be little question but that the testimony of Dr. O'Connell was relevant. Indeed, it was critical. By structuring his defense as he did, Dwyer admitted the criminal conduct alleged. His only hope for acquittal was his asserted lack of criminal responsibility. To this end, expert testimony that defendant suffered from a mental disease or defect was vital. *See United States v. Freeman, supra; United States v. Currier, supra.* Dr. London, upon whom defense counsel had relied, failed to supply this testimony. Whether this failure was due to the doctor's unfamiliarity with the

terminology, or his educated reappraisal of the situation, Dwyer's counsel could hardly have been expected to pack up and go home. His duty to his client required that he attempt to obtain another psychiatrist. Dr. O'Connell, who had previously examined the defendant and filed a report already in evidence, was a logical selection. His testimony outside the presence of the jury showed that he was ready, willing and able to supply the missing link by labeling Dwyer's abnormality a "mental disease". *Compare United States v. Bright, supra,* 517 F.2d at 586. It may well be that his expert opinion, added to the lay testimony already before the jury, would have produced a different verdict.[3]

Since the probative value of the evidence proffered was so great, it should not have been excluded in the absence of a significant showing of unfair prejudice. *Cf. United States v. Mejia,* 529 F.2d 995, 996 (9th Cir. 1976) (*per curiam*). The trial judge's refusal, despite repeated requests, to put his reasons for exclusion on the record substantially impairs our ability to ascertain the source of the "prejudice" to which he referred in his ruling.

■ Although Rule 403 has placed great discretion in the trial judge, discretion does not mean immunity from accountability. Rosenberg, *Judicial Discretion,* 38 The Ohio Bar 819, 826 (1965). Unfortunately, where the reasons for a discretionary ruling are not apparent to counsel, they will probably not be apparent to an appellate court. We therefore find it difficult to comprehend the district judge's adamant refusal to respond to defense counsel's inquiries. The spirit of Rule 403 would have been better served had the judge "confront[ed] the problem explicitly, acknowledging and weighing both the prejudice and the probative worth" of the proffered testimony. *United States v. Robinson,* 174 U.S.App. D.C. 224, 229, 530 F.2d 1076, 1081 (1976). *See also* 1 Weinstein's Evidence ¶ 403[02] at

403–14 to 403–15 (1975); 1 Wigmore, Evidence § 29 at 414 (3d ed. 1940).

■ Both sides to the instant controversy have generously offered to supply us with the basis for Judge Duffy's conclusion. Dwyer suggests that trial court's views on Dr. O'Connell's credibility furnished the foundation for his ruling. The Government suggests, on the other hand, that the prejudice to the Government resulting from the departure of Dr. Portnow justified the trial court's action. In response to Dwyer's suggestion, the Government points out that Judge Duffy explicitly excluded lack of credibility as a reason for his ruling. In discounting the Government's explanation, Dwyer notes that Judge Duffy did not decide to preclude Dr. O'Connell from testifying until after his competency had been explored on voir dire. Dwyer argues, with considerable logic, that Dr. Portnow's unavailability was no greater after the voir dire than it had been before it. In any event the court's failure to explore the reasons for or length of Dr. Portnow's exodus from New York or the possibility of the Government's obtaining the services of another psychiatrist, precludes a justifiable finding of prejudice from this fact alone. Despite the approach of Christmas, an adjournment of a few days could well have solved this difficulty. Where the testimony at issue was noncumulative, and indeed critical, there was no cause for a rush to judgment.

Despite careful consideration of the arguments of counsel, we are unable to ascertain what actually did or permissibly could have prompted the trial judge to act as he did. We therefore conclude that the exclusion of Dr. O'Connell's testimony, so critical to Dwyer's defense, constituted an abuse of discretion. Accordingly, we reverse his conviction and remand for a new trial.

■ Defendant Dobranski did not join Dwyer in his insanity claim but instead sought to convince the jury that he was not

---

**3.** Indeed, Judge Duffy, by requiring Dwyer to undergo psychiatric treatment as a special condition of probation, recognized the serious mental problems under which the defendant labored.

a participant in the illegal transactions. Consequently, he was in no way prejudiced by the ruling on Dr. O'Connell. Although he urges additional claims of error, they are without merit. One of these concerns the mailing of a live cartridge through the mail in violation of 18 U.S.C. § 1716 by a government informant seeking to obtain the trust of the defendants. Dwyer and Dobranski both seek dismissal of the indictment on the ground that this constituted governmental misconduct. We reject this contention. There is no proof that this illegal activity was a factor in obtaining evidence. Furthermore, the alleged conduct took place after the consummation of the September 1 transaction. Finally, it is doubtful that what transpired qualifies as governmental misconduct within the meaning of *United States v. Archer,* 486 F.2d 670, 676–677 (2d Cir. 1973).

Because the retrial of Dwyer will not involve a codefendant, there is no need to reach Dwyer's claim that Dobranski's counsel improperly commented to the jury on Dwyer's failure to testify.

Conviction of Dobranski affirmed. Conviction of Dwyer reversed and the case remanded for a new trial.