**UNITED STATES of America, Appellee,**

v.

**Şeymour ROSENWASSER, Appellant.**

No. 205, Docket 76–1260.

United States Court of Appeals,
Second Circuit.

Argued Sept. 21, 1976.

Decided Feb. 24, 1977.

Gerald L. Shargel, New York City (La Rossa, Shargel & Fischetti, New York City, of counsel), for appellant.

Stanley A. Teitler, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., of counsel), for appellee.

Before HAYS, TIMBERS and GUR-FEIN, Circuit Judges.

HAYS, Circuit Judge:

Seymour Rosenwasser appeals from a judgment of conviction after a jury trial in the United States District Court for the Eastern District of New York (Platt, J.). Rosenwasser was tried jointly with Gerald Allicino on a two-count indictment charging them with unlawful possession of goods stolen from interstate commerce, 18 U.S.C. § 659, and a related conspiracy, 18 U.S.C. § 371. Rosenwasser was acquitted on the conspiracy count, but was convicted of having possessed a quantity of women's garments which had been stolen from an interstate shipment of freight. He was sentenced to a two-year term of imprisonment and a $5,000 fine.[1]

Principally, Rosenwasser contends that it was prejudicial error for the district court to deny his motion for severance and then admit testimony by a government agent concerning a subsequent similar offense committed only by Allicino. This error was compounded, appellant claims, by the court's refusal to permit cross-examination of the government agent. Because we find that neither the admission of the other crimes evidence nor the denial of cross-examination was erroneous, we affirm.

The government's main witness was Paul Fleischer, an admitted hijacker and convict-ed felon. He testified that he participated in the hijacking of a truck owned by Arlene Knitwear Company and the subsequent sale of part of the truck's contents to Allicino and Rosenwasser. According to Fleischer, the hijackers and Allicino and Rosenwasser agreed that Rosenwasser would buy one-third of the goods and keep the rest of the load at his factory until the hijackers could find a second buyer. Fleischer testified that the goods were left with Rosenwasser for one day, after which the hijackers picked up the load and delivered it to one Broverman. Although there was corroborative testimony that seven boxes of the stolen goods were taken by the F.B.I. from Broverman's basement after the investigators were led there by Fleischer, the government offered no independent corroboration of Rosenwasser's involvement. Moreover, none of the stolen goods were ever found in his possession.

The government also called F.B.I. agent Ernest Haridopolos, who testified, over appellant's objection, that he had arrested Allicino three weeks after the hijacking for committing a similar act, possession of a stolen interstate shipment of liquor. Haridopolos told the jury that he had arrested Allicino after observing him unloading the stolen liquor at the street level floor of 2395 Pacific Street, Brooklyn, which, according to other testimony, was the building in which Rosenwasser rented factory space and in which Allicino's brother was the elevator operator.

The court cautioned the jury that Haridopolos' testimony was admissible only against Allicino,[2] and Judge Platt later re-

---

1. Allicino was found guilty of both the possession and the conspiracy charges. His appeal has been voluntarily withdrawn and is therefore not before this court.

2. ."Ladies and gentlemen, you remember that after the opening statement I cautioned you that a portion of the Government's evidence would be only admissible against Mr. Allicino, and this apparently pertains to that portion of the evidence, and secondly, that it would only be introduced for the purpose of showing knowledge or intent in the commission of the crime charged in the indictment, and for that purpose only. I will give you

. . . instructions on the law in this question in my charge. But, bear in mind this does not go to prove the crime charged in the indictment. It only, if you find the facts with respect to this portion of the case to be established, it only goes in on the question of knowledge and intent. It doesn't go in as proof to establish the crime charged in the indictment, in and of itself."

Trial Transcript at 310.

The court had addressed the jury on the same issue just after the government completed the opening statement:

peated this instruction in his charge to the jury.[3] Rosenwasser attempted to cross-examine Haridopolos, but was barred from doing so on the ground that Haridopolos' testimony had not been admitted against him.

■ Appellant now claims that the admission of the other crimes evidence had a prejudicial "spill-over" effect against him, cf. *United States v. De Sapio*, 435 F.2d 272, 280 (2d Cir. 1970), because no cautionary instruction could have enabled the jury to consider the evidence solely against Allicino. Cf. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). He therefore concludes that the probative value of the evidence was "outweighed by the danger of unfair prejudice," Fed.R. Evid. 403, and should have been excluded.

This is a close question, and appellant's argument is not without merit. Generally, when similar act evidence is admitted in a multiple defendant trial, it is clear that the co-defendant claiming prejudice could not have been involved in the similar offense. In those circumstances, there is little doubt that a cautionary instruction is sufficient to preserve the co-defendant's right to a fair trial. See, e. g., *United States v. Payden*, 536 F.2d 541, 543 (2d Cir. 1976); see generally, *United States v. Papadakis*, 510 F.2d 287, 295 (2d Cir.), cert. denied, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975); *United States v. De Sapio*, supra, at 280.

In this case, however, the evidence admitted against Allicino was not so clearly unrelated to the charges against Rosenwasser. The stolen liquor episode occurred only three weeks after the alleged purchase by Rosenwasser of the hijacked women's garments; moreover, the liquor was recovered in the same building and on the same floor

"Now ladies and gentlemen, with respect to that last bit of evidence, the Government said it was going to produce pertaining to the alleged possession, allegedly stolen liquor three weeks after the events described in this indictment, that is being offered on what we call proof of a similar act; or what the Government calls proof of a similar act; and it's offered solely against the defendant Allicino. It is not being offered against the defendant Rosenwasser and if that evidence is produced it will only be received against defendant Allicino, and and it will only be received for a limited purpose of showing knowledge with intent to commit the crime as to which I'll give you a further instruction at the conclusion of the case, but when and if that proof comes I'll give you preliminary instructions on the question; and at the conclusion of the case I'll give you full instructions."

Id. at 19–20.

3. "Now, there was proof in this case which was admitted solely—I should say there was evidence in this case admitted solely against the defendant Allicino, namely the possession of recently stolen liquor, knowing the same to have been stolen sometime shortly after the events alleged in the indictment.

Now, this special instruction, which I said I would give you on this point reads as follows:
The fact that the defendant, Allicino, may have committed another offense at some time is not any evidence or proof whatever that, at a prior time, the accused committed the offense charged in the indictment, even though both defenses (sic) are of a like nature. Evidence as to an alleged earlier or later offense of a like nature may not therefore be considered by the jury, in determining whether the accused did the act charged in the indictment. Nor may such evidence be considered for any other purpose whatever, unless the jury first finds that other evidence in the case, standing alone, establishes beyond a reasonable doubt that the accused did the act charged in the indictment, leaving aside only the question of whether he did it knowingly and willfully.

If the jury should find beyond a reasonable doubt from the other evidence in the case that the accused, Allicino, did the acts charged in the indictment, then the jury may consider evidence as to an alleged earlier or later offense of a like nature, in determining the state of mind, knowledge or intent with which the accused did the acts charged in the indictment. And where all the elements of an alleged earlier or later offense of a like nature are established by evidence which is clear and conclusive, the jury may, but is not obliged to, draw the inference and find that in doing the act charged in the indictment, the accused, Allicino, acted willfully, knowingly, and with specific intent, and not because of mistake or accident or other innocent reason."

in which Rosenwasser rented space.[4] We therefore agree that cases such as *United States v. Payden, supra*,[5] are not dispositive of this appeal.

Nevertheless, Judge Platt cautioned the jury on three separate occasions that evidence admitted solely against Allicino was not to be considered in deciding Rosenwasser's guilt or innocence. *See* notes 2 and 3 *supra.* Under the circumstances of this case, these limiting instructions were sufficiently strong to preclude the jury from utilizing the agent's testimony to convict Rosenwasser. Thus, it is especially significant that the jury knew that Allicino had access to the Pacific Street building by virtue of his brother's employment there, and that the stolen whiskey had been recovered from a part of the building not leased by Rosenwasser.[6] With the full factual presentation before it, the jury was capable of considering Haridopolos' testimony exclusively against Allicino.[7] In short, we find that the wide discretion afforded the trial judge in weighing the probative worth of proffered evidence against its potential prejudicial impact, *see, e. g., United States v. Montalvo*, 271 F.2d 922, 927 (2d Cir. 1959), was not abused in this case. *See, also, United States v. Dwyer*, 539 F.2d 924, 927 (2d Cir. 1976).

It follows that the district court acted properly in denying appellant the right to cross-examine Haridopolos. The jury would almost certainly have been confused had Judge Platt allowed cross-examination by Rosenwasser after carefully charging that Haridopolos' testimony was directed only against Allicino. We simply do not agree that cross-examination, with the attendant confusion, would have been more effective than the limiting instructions in aiding the jury to disregard the stolen liquor evidence as against Rosenwasser. In sum, once Judge Platt decided, correctly we think, that Haridopolos was not a witness against Rosenwasser, there was no reason to permit cross-examination. We therefore hold that the district court did not abuse its discretion in denying appellant the right to cross-examine Haridopolos. *See Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *United States v. Jenkins*, 510 F.2d 495, 500 (2d Cir. 1975); *United States v. Kahn*, 472 F.2d 272, 281 (2d Cir.), *cert. denied*, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973).[8]

We have carefully considered appellant's other arguments and find them to be without merit. Accordingly, the judgment of conviction is affirmed.

GURFEIN, Circuit Judge, dissenting:

I respectfully dissent.

This is a case involving several unusual elements. There was no independent corroboration of the delivery of the goods to appellant Rosenwasser four years earlier.

---

4. Nor are we unmindful of the fact that Rosenwasser was convicted on the uncorroborated testimony of a convicted felon.

5. In *Payden*, we held that defendant had not been prejudiced by the introduction of evidence against his co-defendant Vernon, since the trial court's charge had properly cautioned the jury not to consider such evidence against Payden. In that case, however, the evidence admitted against Vernon was relevant to a charge which was totally unrelated to the charges against Payden.

6. Rosenwasser testified that Allicino's brother Tony was the elevator operator at 2395 Pacific Street, and that his responsibilities included "[taking] care of the building." Trial Transcript at 404–05. Appellant also testified, in effect, that the liquor had been recovered from an area used commonly by all of the building's tenants. *Compare* Trial Transcript at 416–19 *with* Trial Transcript 311–18.

7. Indeed, Rosenwasser's acquittal on the conspiracy charge indicates that the jury adhered to the court's instructions. Had the jury considered the stolen liquor evidence against Rosenwasser, such a verdict would be incongruous.

8. Nor was appellant deprived of his sixth amendment right to confrontation. We decline to accept Rosenwasser's argument that "if the witness . . . *arguably* was a witness against him, he should have been allowed to cross-examine." Appellant's Brief at 22 (emphasis in original).

Nor were any of the stolen goods found in his possession. The conviction rested solely on the testimony of one of the hijackers, Paul Fleischer.

According to his testimony, Allicino, the co-defendant, agreed to purchase the entire load. Arrangements were made to deliver the stolen goods to Allicino the following Monday morning, March 6, at a factory building on Pacific Street in Brooklyn, a building with several tenants. On that date, Fleischer met with five of the confederates, and all six went to a building at 2395 Pacific Street where they met with Allicino and his brother, the elevator operator for the building.[1] Allicino helped to unload the stolen goods from the truck and to bring them to appellant's first floor factory by use of the freight elevator. When they reached appellant's floor, Allicino introduced appellant Rosenwasser to the group as his "partner." Rosenwasser immediately proclaimed that he "did not want the load." An argument ensued between one of the thieves and Rosenwasser, in which the thief threatened to kill Rosenwasser if he did not "take the load."[2] At the conclusion of the altercation, Fleischer testified, Rosenwasser finally agreed to buy one-third of the stolen goods.[3] "They" were required to keep the rest of the load at Rosenwasser's factory until the hijackers found a second buyer. It was agreed that the thieves would be paid $2300 by appellant and his associates and that Allicino would deliver the money to the house of one of the hijackers. He testified that Allicino did deliver the money that night to the hijackers and that it was divided by the group's participants. Two others were then shown samples of the stolen property and sent to find a buyer for the rest. According to Fleischer, the next morning the entire group picked up the rest of the load at Rosenwasser's and took it to the house of one Broverman and were paid for the goods.

FBI agent Ernest Day Haridopolos was permitted to testify that on March 28, 1972 (a date after the substantive count pleaded, and after the pleaded conspiracy had ended), he arrested Allicino for having committed a similar act and that he had charged Allicino with possession of an interstate shipment of hijacked liquor. Not content with testimony that Allicino had possessed a shipment of stolen liquor, the prosecutor had him tell the jury that the arrest of

---

1. See note 6, supra.

2. The prosecution's version of the purchase of the stolen goods was not the usual stereotype of an eager receiver.

   Fleischer testified:

   "Q. When you first met Mr. Rosenwasser in the loft there, did you have a conversation with him?

   "A. No.

   "Q. Did anyone have a conversation with Mr. Rosenwasser in your presence?

   "A. Rocky was talking to Allicino and Rosenwasser.

   "Q. What did Mr. Mastriangelo say in your presence, what did Mr. Allicino and Mr. Rosenwasser say in return?

   "A. After the load was brought up Mr. Rosenwasser didn't want the load.

   "Q. What did he say?

   "A. He didn't want it.

   "Q. What did he say?

   "A. He told it to everybody.

   "Q. What was his reply?

   "A. An argument broke out between Peters and Rosenwasser.

   "Q. What did Charlie Peters say?

   "A. Peters yelled out, 'I'll kill that Jew bastard if you don't take the load.'

   "Q. When you say 'they,' what do you mean?

   "A. Peters and Rosenwasser.

   "Q. What was said, if you can recall, specifically?

   "A. It was decided that they would take one-third of the load—

   "Mr. Wallach: Objection.

   "The Court: Yes.

   "Q. Try to remember—

   "A. Allicino said he would take one-third of the load.

   "Q. What did Mr. Rosenwasser say?

   "A. He agreed.

   "Q. What did Peters say?

   "A. But we have—they will take one-third but they have to keep the rest of the load in their drop." (Tr. 100–02).

3. Fleischer indicated that when he told Allicino that the garments were stolen, it was not in the presence of appellant, but the jury might infer in the circumstances, if Fleischer is believed, that Allicino passed on his own knowledge to appellant.

Allicino followed a surveillance of Allicino as he unloaded the stolen liquor at the street level floor of 2395 Pacific Street, Brooklyn, the building in which Rosenwasser had his loft on the first floor and in which Allicino's brother was the elevator operator. That address had already been testified to as the location of appellant's business, as well as being that of other tenants.

In addition to producing character witnesses, appellant himself took the witness stand. Appellant denied any involvement in the crimes charged. He conceded that he was the owner of Trekon Sportswear, located at 2395 Pacific Street, Brooklyn. He admitted knowing Allicino and his family for 25 years, and that on March 6, 1972, the date of the crime, he and Allicino were friends. Appellant swore that he had never received the stolen garments.[4] Four employees of Rosenwasser who worked for him in March 1972 testified that they never observed an incident such as that described by Fleischer. It was stipulated that "if approximately another 15 or 20 employees of the factory were called, they would testify in a similar manner." Appellant also explicitly denied knowing that stolen liquor had been stored on the ground floor of the building during March 1972.

The Government had indicated before trial that it intended to prove a subsequent crime by defendant Allicino. Counsel for Rosenwasser moved for a severance on that ground before trial. The motion was de-

nied. At the opening of the trial, counsel asked the judge whether he had to renew the motion for severance when the United States Attorney opened to the jury or whether it was sufficient that it was brought to the court's attention. The judge did not respond directly on whether counsel had to renew his motion, but, in effect, ruled that a new motion was not necessary when he asked counsel to remind him after the prosecution's opening statement to tell the jury "that he refers only to the defendant Mr. Allicino and does not refer to Mr. Rosenwasser, if as and when proof is required in that event."

At this point the judge was informed that Allicino had pleaded guilty to a violation of 18 U.S.C. § 659, unlawful possession of liquor valued at less than $100 (a misdemeanor).

The trial judge knew that Rosenwasser had sought a severance or exclusion of the "other crime," and that he was ready to renew the motion at the trial. The court also knew that since Allicino had pleaded guilty in connection with the similar offense, a record of conviction was available to establish the commission of the offense. There was no need for oral testimony about the facts involved in the "other crime."[5]

The prosecution was, nevertheless, permitted to introduce through Agent Haridopolos, who arrested Allicino for the "other crime," the whole story of Allicino's involvement in a quite separate crime which the court recognized required a separate

---

4. It is possible that fear of violence prompted appellant to consent to take part of the load. That same fear may have prompted him to deny the incident, which, of course, he had no right to do. On the other hand, the testimony of the hijacker may have been false, including the embellishment of appellant's unwillingness and the coercive threat, and appellant may have told the truth in denying the whole incident.

5. Even if the official record of convictions of Allicino were to be held inadmissible because the bargain plea was to a misdemeanor (not a crime punishable by imprisonment in excess of one year) and excluded on the ground that it does not come within the limited hearsay exception of Rule 803(2) of the Federal Rules of

Evidence,—a proposition we need not decide, —the non-hearsay testimony of the agent with personal knowledge of the offense could have been admitted without allowing him to describe the movement of the liquor in to the Pacific Street building with photographs in order to spell out a similar offense "against Allicino." The Government does not take the position that such details as the address of the liquor drop proved the details of any *modus operandi*; the evidence was received solely on the issue of intent. We are reminded, moreover, that even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Federal Rule of Evidence 403.

cautionary instruction to the jury to the effect that it was not being offered against Rosenwasser. The story which Haridopolos was permitted to tell ended with the stolen whiskey literally at co-defendant Rosenwasser's doorstep. This testimony was accompanied by photographs taken showing the stolen liquor in the hallway of the building that was also appellant's place of business; the photographs were admitted over objection. In the face of the uncontested conviction of Allicino for this theft, to admit the photographs was, indeed, to gild the lily.

This is, therefore, an unusual case. Generally when evidence of a similar offense is admitted in a multiple defendant trial it is abundantly clear that the co-defendant who claims prejudice could not have been involved in the similar offense. In such circumstances, we have held a cautionary instruction to be sufficient. (*See, e. g., United States v. Papadakis*, 510 F.2d 287, 300 (2d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975) ("clearly had no connection with [co-defendants'] corrupt activities"); *United States v. Payden*, 536 F.2d 541, 543 (2d Cir. 1976) (alleged misjoinder of count with which appellant was not connected); *United States v. De Sapio*, 435 F.2d 272, 280 (2d Cir. 1970) ("it had not the slightest tendency to prove De Sapio's participation in the Con Ed conspiracy")).

But the evidence here had far more than "the slightest tendency" to spill-over. *United States v. De Sapio, supra*. The evidence tendered did not relate to a similar offense by Allicino alone without any connection to Rosenwasser. The stolen liquor was brought to appellant's doorstep without an iota of evidence that he had anything to do with the stolen liquor. The prosecution conceded on oral argument in this court that it had "no idea" whether Rosenwasser

was, in fact, connected with this crime. Yet, in its opening argument the Government stressed that the stolen liquor was found at "exactly the same address, exactly the same location in exactly the same building through exactly the same doorway as the stolen sweaters and that's Mr. Rosenwasser's building, and if that's not exactly hold me to it." [sic] See Tr. at 19. This hardly seems fair play.

At this juncture no instruction could keep the jury from being suspicious without proof, the very evil guarded against by the rules of evidence. In sum, the circumstantial evidence was not strong enough to show that appellant committed the other offense, but it was, paradoxically, strong enough to cast grave suspicion upon him.[6] For the stolen liquor, as we have seen, was laid at his very doorstep, at the street level floor in the very building where he rented a loft upstairs. Prejudice was inevitable. The spill-over effect is graphically shown in a letter from the Probation Department to appellant's wife in which it is stated that "[w]hen Allicino was arrested on the other offense he was unloading stolen cases of whiskey *at your husband's place of business*." (App. 201). If a trained Chief Probation Officer believed appellant to be guilty of the similar offense, what of a lay jury?[7] Analogy is strong to the constitutional vice found incurable by cautionary instruction in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)

On a pre-trial motion to sever in a multiple defendant case, the trial judge should elicit from the Government what evidence it intends to offer regarding an alleged similar offense by one defendant which has a spill-over likelihood with respect to another defendant. *See Bruton v. United States,*

---

**6.** Even where evidence of a similar offense committed by the defendant himself is offered, the proof must be "plain, clear and convincing." *United States v. San Martin*, 505 F.2d 918, 921 (5th Cir. 1974); *United States v. Machen*, 430 F.2d 523, 526 (7th Cir. 1970). The proof of the similar offense must not merely cast suspicion, for that would simply compound the mischief.

**7.** It is possible that a similar inference in the probation report may have affected the sentence, and there should, at least, be a remand for resentencing. *See United States v. Rosner*, 485 F.2d 1213 (2d Cir. 1973).

*supra; see United States v. Glover*, 506 F.2d 291, 298 (2d Cir. 1974). If the spillover is likely to be prejudicial to the other defendant, the Court should give the Government the choice of a severance or of exclusion of the prejudicial evidence if the Government opts for a *joint* trial. Under Rule 14 where a defendant is prejudiced by a joinder of defendants for trial together, the trial judge has a "continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960). *See United States v. Papadakis*, 510 F.2d 287 (1975). While Rule 14 speaks in terms of discretion, the failure to grant a severance in the circumstances here related was an abuse of discretion and prejudicial error for the reasons stated herein. Denial of a severance can, if prejudicial, be ground for reversal. *See Schaffer v. United States*, 221 F.2d 17, 19 (5th Cir. 1955); *Barton v. United States*, 263 F.2d 894 (5th Cir. 1959).[8]

After his efforts to gain a severance had failed, and in the face of the courts' decision that a cautionary instruction was enough to ward off prejudice, Rosenwasser's counsel sought to dissipate the circumstantial basis for the spill-over prejudice by cross-examining agent Haridopolos. Before a question was asked, however, the prosecution objected to allowing appellant's counsel to cross-examine the agent at all. The court agreed with the Government, and denied appellant *any* cross-examination upon the stated ground that "[i]t's not admitted against him."

I think that the stated ground begs the question. Agent Haridopolos' testimony clearly implicated Rosenwasser. Notwithstanding the precautionary instructions, therefore, Haridopolos ought properly to be considered a witness "against" Rosenwasser for confrontation purposes. The constitu-

tional right of confrontation is, in essence, a right to cross-examine. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Bruton v. United States, supra*. The scope of the cross-examination is, of course, largely within the court's discretion. *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *see United States v. Jenkins*, 510 F.2d 495, 500 (2d Cir. 1975). But appellate review of an absolute denial of cross-examination stands in different case. In the words of Wigmore, "The main and essential purpose of confrontation is to *secure for the opponent the opportunity of cross-examination*." 5 Wigmore, Evidence § 1395 at 123 (Chadbourn ed. 1975) (emphasis in original).[9]

When the direct examination of the witness sought to be cross-examined has affected the co-defendant, he must be allowed to cross-examine, even if the witness is himself a co-defendant. *See United States v. Zambrano*, 421 F.2d 761 (3d Cir. 1970). When the court permitted Agent Haridopolos to spread before the jury the story of Allicino's other criminal conduct with the unfortunate and inevitable suspicion of appellant's participation because of the very circumstances narrated, appellant had the right to clarify the picture by cross-examination. A series of negative responses by Haridopolos with respect to Rosenwasser's involvement would have done far more to dissipate the prejudice than any cautionary instruction or argument by counsel in summation.

As Judge Waterman wrote for this court in *United States v. DeCicco*, 435 F.2d 478, 483 (2d Cir. 1970), reversing a conviction for conspiracy to transport stolen goods, in spite of a cautionary instruction:

> "Little discussion is needed to demonstrate that prior similar acts of miscon-

---

8. As the Advisory Committee on Rules noted, "The purpose of the amendment [in 1966 to Rule 14] is to provide a procedure whereby the issue of possible prejudice can be resolved on the motion for severance." *See Bruton, supra*, 391 U.S. at 132, 88 S.Ct. 1620.

9. Ironically, at least the postal inspector who testified to the oral confession implicating Bruton was on the stand subject to cross-examination. Here the FBI agent was on the stand, but even he was held not to be subject to cross-examination.

duct performed by one person cannot be used to infer guilty intent of another person who is not shown to be in any way involved in the prior misconduct, unless it be under a 'birds of a feather' theory of justice. Guilt, however, cannot be inferred merely by association."

Here the prejudice was more severe, for the jury, affected by the prosecutor's drawing the very inference in his opening statement, must have been left with the gnawing suspicion that appellant might have had something to do with the similar offense, thereby raising "a prejudicial atmosphere of guilt by innuendo." *See United States v. DeCicco, supra*, at 482, n.5.[10]

The lack of independent evidence, aside from Fleischer's testimony linking appellant to the crime, fortifies the conclusion that serious prejudice would have resulted from the way the prosecution presented its case, and from the way the trial court denied appellant's efforts to minimize the prejudice.[11]

I have written at some length, because I am troubled by this case, not only by the unfairness to which appellant was subjected, but because, with due respect, affirmance of what the majority concedes "is a close question, and appellant's argument is not without merit" represents, for me, an abdication of our true appellate function.

One cannot help reflecting that justice tends to become bogged down in precedents which at the time they were announced no more expressed the view of the authors on an issue that surfaces later, than the legislature actually thought about an unintended gap in a statute. I predict with unhappy confidence that the majority opinion, will be cited in all manner of circumstances as establishing that anything goes so far as multiple defendant trials are concerned. In my view, that is not good for a balanced and fair system of criminal law. There are few areas in which it is as important for this court to keep a watchful eye as on the admissibility of similar offenses in a case involving more than a single defendant. For this case is only a variation of the *Bruton* problem.

I would reverse the conviction and order a new trial.

---

**10.** In *United States v. Zane*, 495 F.2d 683 (2d Cir. 1974), the judge refused appellants the right to cross-examine a witness who contradicted the testimony of a co-defendant Persky, on rebuttal, because of an instruction that it was admitted only against Persky. We said at 694: "if this ruling were crucial we might doubt its soundness as a general principle, since the 'rub-off' effect of testimony against a co-defendant may sometimes prejudice a defendant, despite an instruction that it is not to be considered against him, *see Krulewitch v. United States*, 336 U.S. 440, 454 [69 S.Ct. 716, 93 L.Ed. 790] (1949) (Jackson, *J.*, concurring); *Blumenthal v. United States*, 332 U.S. 539, 559 [68 S.Ct. 248, 92 L.Ed. 154] (1947)." But we held that, on that record, "nothing in Persky's statements as recounted by Green could have

prejudiced Zane and Silverman." Here that is just not so. And in the language of Judge Mansfield in *Zane*, we do have to "cross that Rubicon in this case," *ibid.*

**11.** On a new trial, I would have suggested that FBI Agent Redman not be permitted to state again simply that he had a conversation with appellant without any explanation of its content. No purpose is served by the testimony that the agent had a conversation with a defendant without more, other than to permit the jury to engage in idle speculation that some technical rule prevented the truth from being presented or that appellant had claimed his privilege against self-incrimination. The Government offers no credible support for the technique used or, indeed, for its relevance.