**UNITED STATES of America,
Appellee,**

v.

**A. J. BRIGGS, a/k/a "Smiley," Appellant.**

**No. 610, Docket 71-2155.**

United States Court of Appeals,
Second Circuit.

Argued March 10, 1972.

Decided March 29, 1972.

Norman E. S. Greene, Asst. U. S. Atty., Buffalo, N. Y. (C. Donald O'Connor, Jr., Acting U. S. Atty., of counsel), for appellee.

Henrietta M. Wolfgang, Buffalo, N. Y. (Samuel L. Green, Buffalo, N. Y., of counsel), for appellant.

Before FRIENDLY, Chief Judge, TIMBERS, Circuit Judge, and JAMESON, District Judge.[*]

FRIENDLY, Chief Judge:

This appeal from a judgment of conviction entered in the District Court for the Western District of New York, after a jury trial, differs from the usual narcotics case in three respects: The informer, one Jefferies, who, on the Government's evidence, introduced Narcotics Agent Ford to the defendant and was present at the two sales which formed the basis for the indictment, appeared as a defense witness and denied that the introduction and the transactions to which Agent Ford had testified had ever taken place.[1] The defendant took the stand and denied having been present at the times and places to which the Agent testified. A third defense witness, Jordan, testified it was he who had met with Agent Ford but claimed his Fifth Amendment privilege when questioned about the transactions.

On cross-examination the Government confronted Jefferies with three state-

---

[*] Of the United States District Court for the District of Montana, sitting by designation.

1. Defense counsel had apprised the Government, after the indictment, of Jefferies' denial. By agreement Jefferies was produced for examination by the Assistant United States Attorney; later his exculpatory testimony was recorded before the grand jury. Also, by agreement of counsel, a lineup was conducted before a magistrate, with defense counsel producing all the participants. Narcotics Agent Ford identified defendant Briggs. Counsel are to be commended for this cooperation. The success of the lineup from the Government's standpoint underscores our recent observation that "prosecutors might well consider whether they would not only better protect the rights of the defendant but save themselves much needless argument if, in a case like this, where the defendant was in custody and there was no time pressure, they would have a properly conducted lineup." United States v. Fernandez, 456 F.2d 638, 641 n. 1 (2 Cir. 1972).

ments, consistent with the testimony of the narcotics agent, in which Jeffries positively identified Briggs as the seller. When asked by the Government if he remembered signing them, Jefferies said that Agents Milano and Teresi had given him papers to sign, that he was told to sign in the name of Jones, that he had not read the papers, and that the statements in them were not true. In rebuttal Agents Bush, Teresi and Ford testified that the agents had prepared the statements and that they were read to Jefferies before he signed them. The court allowed them to be introduced in evidence.

■ The Government contends that these statements were admissible as affirmative proof, on the basis that by our decisions in United States v. Kahaner, 317 F.2d 459, 473–474 (2 Cir.), cert. denied, 375 U.S. 835, 84 S.Ct. 62, 11 L.Ed. 2d 65 (1963), and United States v. De-Sisto, 329 F.2d 929, 932–934 (2 Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964), "the rule limiting the use of prior inconsistent statements as affirmative evidence was abandoned insofar as such statements were signed and sworn to by the declarant, as was the situation at present."[2] If the district court had preceded on any such theory, it would have been in error. We cannot understand how the Government can misread these cases so egregiously. *Kahaner* approved application of the "orthodox" rule that prior inconsistent statements, even grand jury testimony as in that case, can be used only for impeachment, although indicating possible receptivity to a change. In *De Sisto* we departed from that rule to the limited extent of allowing prior inconsistent trial or grand jury testimony of a witness who was subject to cross-examination at the trial to be used as affirmative evidence. Three months before the instant trial we made the limited scope of *De Sisto* clear beyond peradventure in United States v. Cunningham, 446 F.2d 194, 197–198 (2 Cir.), cert. denied, 404 U.S. 950, 92 S.Ct. 302, 30 L.Ed.2d 266 (1971), rejecting the very argument here made by the Government.[3]

However, our rejection of the Government's argument does not carry the day for Briggs. Chief Judge Henderson did not proceed on the erroneous basis for which the Government contends. He told the jury that "the only reason these statements come in at all is under the rule of law that the jury is entitled to hear any alleged inconsistent statement, allegedly inconsistent to what the witness has testified on the stand here"; that "[i]f one of your neighbors told you one thing one day and the next day told a seriously changed story about the same subject matter, in the nature of things, you would question the believability of such a neighbor"; and that this was "the only purpose" for which the statements had been received. While this seems clear enough, the judge would doubtless have made the point even clearer if he had been asked.[4]

■ There is equally little merit in Briggs' objection to the court's allowing an agent to testify that, despite his denials on cross-examination, Jeffries had said on two occasions that Briggs had threatened his life if he did not testify in an exculpatory manner. Whether the receipt of such threats be characterized as showing "bias," or "corruption," or "interest," their relevance as impeaching

---

**2.** Although the point is not material, in fact this was not "the situation at present." Although the statements purported to have been sworn to before Agent Bush, he was not authorized to administer an oath.

**3.** As we pointed out in *Cunningham*, it is true that the statements would be admissible as affirmative evidence under Rule 801(d) (1) of the Proposed Federal Rules of Evidence 51 F.R.D. 315, 413 (1971). This case affords another illustration how dangerous such a rule would be.

**4.** The judge properly cautioned the jury that in this case there were the added factors of whether the statements had been signed by Jefferies at all and, if so, to what extent he had known of their contents.

Jefferies' testimony is too apparent to require argument. It is plain that impeachment of this sort is not limited to cross-examination. See United States v. Lester, 248 F.2d 329, 334–335 (2 Cir. 1957); 3A Wigmore, Evidence § 948 (Chadbourn rev. 1970); McCormick, Evidence § 40 at 85–86 (1954). No doubt this evidence was "prejudicial" to Briggs in the sense that if the jury believed the agent, the evidence would tend strongly toward conviction. But it was also highly probative on the credit to be given the turncoat informer. This is not the kind of "prejudice" against which the law of evidence can or should protect.

■ Little need be said with respect to Briggs' claim that the two months delay between his sales to the agent and his arrest deprived him of a speedy trial. No specific prejudice was alleged, except a dimming of his own recollection exactly where he was on the two nights in question and the possible dimming of that of others who might have provided an alibi. Insofar as the argument is grounded on the provision in the Sixth Amendment that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial," it is set at rest by United States v. Marion, 404 U. S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). As Mr. Justice White there made plain, the constitutional provision governing delay in arrest or indictment is rather the much broader standard of the due process clause. Recognizing that a decision whether the defendant has been denied due process "will necessarily involve a delicate judgment based on the circumstances of each case," the Court sufficiently indicated the unlikelihood that it would be impressed with one like this:

> Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution.[5]

The Government tells us the relatively short delay in arrest was caused by a desire to catch other fish in its net, a legitimate consideration in law enforcement. Absent any contrary Supreme Court precedent, our decision in United States v. Capaldo, 402 F.2d 821, 823 (2 Cir. 1968), cert. denied, 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969), is *a fortiori* authority here.

■ Finally, appellant lists no less than eleven points in which the prosecutor's summation allegedly transgressed proper standards. Only two of these were the subject of objection. When the prosecutor speculated that perhaps the defense was giving Jefferies, an admitted addict, "some free stuff to keep him going until after this trial," the judge admonished that there was "no evidence whatever in this case about such a practice." The prosecutor also said Agent Teresi had testified to a statement by Briggs to him that if Jefferies testified against Briggs and Briggs was convicted, Jefferies was going to die. When defense counsel objected, the judge said he remembered no such testimony by Agent Teresi, told the jury to disregard the remark, and asked the prosecutor to correct it. The prosecutor stated that what he had meant was that Agent Milano had testified that Agent Teresi had recounted such a statement by Briggs. This was true; the otherwise inadmissible hearsay had been elicited on cross-examination of Milano. So far as these two items are concerned, we find no sufficient basis for reversal.

■ We recognize that this is not the whole story. Although the general rule is that "the burden is on the defendant to take his objection at the earliest possible opportunity when, by so doing he can enable the trial judge to take the most efficacious action," Holden v. United States, 388 F.2d 240, 242–243 (1 Cir. 1968) cert. denied, 393 U.S. 864, 89 S.Ct. 146, 21 L.Ed.2d 132 (1968); United States v. Nasta, 398 F.2d 283, 285 (2 Cir. 1968); Crumpton v. United

---

5. 404 U.S. at 324–325, 92 S.Ct. at 465 (footnote omitted).

States, 138 U.S. 361, 363–364, 11 S.Ct. ·355, 34 L.Ed. 958 (1891), a prosecutor's summation may be so permeated with improprieties that defense counsel may legitimately consider constant objection during the summation to be useless and even detrimental. However, even in such extreme cases there would seem to be no reason why he should not be required to bring the matter to the judge's attention, outside the presence of the jury, at the end of the summation, so that the court can consider whether to attempt curative instructions or to declare a mistrial, see United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 237–243, 60 S.Ct. 811, 84 L.Ed. 1129 (1940), rather than gamble on obtaining an acquittal. When defense counsel has failed even to do that, an appellate court will reverse only if the summation was so "extremely inflammatory and prejudicial," United States v. DeAlesandro, 361 F.2d 694, 697 (2 Cir.), cert. denied, 385 U.S. 842, 87 S.Ct. 94, 17 L.Ed.2d 74 (1966), that allowing the verdict to stand would "seriously affect the fairness, integrity or public reputation of judicial proceedings," United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). See also New York Central R.R. v. Johnson, 279 U.S. 310, 318–319, 49 S.Ct. 300, 73 L.Ed. 706 (1929); San Antonio v. Timko, 368 F.2d 983, 986 (2 Cir. 1966).

██ While the summation may have approached this level, it did not reach it. We cannot indeed understand why, after the many admonitions from this court, see, e. g., United States v. Johnson, 331 F.2d 281, cert. denied, Pheribo v. United States, 379 U.S. 905, 85 S.Ct. 196, 13 L. Ed.2d 178 (1964); United States v. Hestie, 439 F.2d 131, 132 (2 Cir. 1971); United States v. Leeds, 457 F.2d 857, 860, 861 (2 Cir. 1972), and others, see ABA Standards Relating to the Prosecution Function and the Defense Function § 5.8(b) and authorities cited at p. 128, a prosecutor should make such a remark as "I believe these agents, I have no doubts in my mind." However, careful examination of the summation indicates that on many of the points listed by appellant as objectionable, the remarks were legitimate argument and that, on others, the degree of departure from proper norms has been considerably exaggerated. On reading the summation as a whole in the light of that defense counsel and the court's instructions, we do not find such "plain error" as to warrant the grant of a new trial.

Affirmed.