UNITED STATES of America,
Appellee,

v.

Arnaldo MARQUEZ and Humberto
Rivero, Appellants.

Nos. 621, 772, Dockets 71–2148
and 72–1006.

United States Court of Appeals,
Second Circuit.

Argued May 10, 1972.

Decided June 16, 1972.

**894**

Charles T. McKinney, New York City (Kenneth B. James, New York City, on the brief), for appellant Marquez.

Raymond B. Grunewald, Brooklyn, N.Y. (Jerome C. Ditore, Brooklyn, N.Y., on the brief), for appellant Rivero.

John M. Walker, Jr., Asst. U.S. Atty., New York City (Whitney North Seymour, Jr., U.S. Atty., Richard J. Davis and Peter F. Rient, Asst. U.S. Attys., New York City, on the brief), for appellee.

Before FRIENDLY, Chief Judge, and McGOWAN * and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

Arnaldo Marquez and Humberto Rivero appeal from judgments of conviction following a jury trial in the District Court for the Southern District of New York, Charles M. Metzner, *District Judge,* finding them guilty of violating the federal narcotics laws and conspiring to do so.[1] On November 11, 1971, the district court sentenced Marquez to concurrent ten year terms of imprisonment and fined him $20,000, and sentenced Rivero to concurrent seven year terms of imprisonment. On appeal, appellants contend that a co-defendant's statement was improperly excluded from evidence, that the government's summation deprived them of a fair trial and that the indictment must be dismissed because the government misled the grand jury. For the reasons stated below, we affirm.

The evidence adduced at trial established that on May 27, 1970, in front of a Manhattan bar, Marquez sold Rivero and co-defendants Otero and Garcia 976 grams of cocaine.[2] Officers of the New York Police Department observed Rivero hand Marquez an envelope later found to contain $2,600 in cash. Marquez then handed a multicolored package to Otero, who tore open the package, examined the contents, which were later found to be cocaine, and handed the package to Rivero. Rivero then placed the multicolored package in a Ford Falcon. Two days earlier, on the evening of May 25, Rivero had been observed driving the same Falcon to several bars in Queens where he had delivered packages wrapped in the same distinctive multicolored paper used to wrap the cocaine received from Marquez on the night of May 27.

■ Appellants' first contention is that the district court erred in excluding a post-arrest, pre-arraignment statement made by co-defendant Otero to an Assistant United States Attorney. The

---

\* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

1. Marquez was convicted of selling cocaine and of conspiring to do so, in violation of 26 U.S.C. §§ 4705(a) and 7237(b) (1964). Rivero was convicted of possession of cocaine and of conspiring to sell cocaine, in violation of 26 U.S.C. §§ 4701, 4703, 4704(a), 4771(a), 7237(a), 4705(a) and 7237(b) (1964).

    These provisions of the federal narcotics laws were repealed by Pub.L.No.91–513, § 1101(b), 84 Stat. 1292 (1970). By the terms of § 1105(a), the repealer became effective on May 1, 1971. However, the repealer contained a saving provision, § 1103(a), as to prosecutions under these provisions for violations committed prior to May 1, 1971.

2. Otero was a fugitive at the time of trial and his case was severed. Garcia was tried with appellants and found guilty of possessing cocaine and conspiring to sell cocaine. Judge Metzner sentenced him to concurrent five year terms of imprisonment. Garcia filed a notice of appeal, but subsequently withdrew his appeal.

Assistant recorded the substance of Otero's remarks on an interview form as follows:

"Cocaine mine. Other guys had nothing to do with it. Got cocaine yesterday. Don't know who I got it from."

Since Otero was unavailable at the time of trial, appellants sought to overcome the hearsay obstacle by arguing that the statement was admissible as a declaration against penal interest.[3] An examination of the statement reveals, however, that not all of it constitutes a declaration against Otero's penal interest. As we noted in United States v. Dovico, 380 F.2d 325, 327 (2 Cir.1967), cert. denied, 389 U.S. 944 (1967), "[e]ven a broadened penal interest exception must have some boundaries and must be limited at least to statements admitting a particular crime for which prosecution is possible at the time." Otero's statement that the "[o]ther guys had nothing to do with it" does not satisfy the *Dovico* test. This declaration did not admit an additional crime or subject Otero to more serious charges or more severe punishment. Otero merely sought to exculpate his friends, and the statement therefore lacks the inherent reliability which justifies the declaration against interest exception to the hearsay rule. See United States v. Seyfried, 435 F.2d 696, 697–98 (7 Cir.1970), cert. denied, 402 U.S. 912 (1971).

Otero's statement that the "[c]ocaine [is] mine" does appear, however, to be a declaration against penal interest. Even if we were to assume that declarations against penal interest should be admissible as an exception to the hearsay rule, the most that would have been proper would have been to admit that portion of Otero's statement which was against his penal interest and exclude the remainder. See United States v. Seyfried, *supra*, 435 F.2d at 698; McCormick, Evidence 553 (1954). Appellants never argued below, however, that Otero's statement was separable and that at least a portion of it was admissible. Absent such a request, we do not think that the district court should be faulted for excluding the entire statement.

Moreover, even if we were to recognize declarations against penal interest as an exception to the hearsay rule and considered that the district court erred in excluding Otero's declaration that the "[c]ocaine [is] mine," we would be satisfied that any error was harmless. Marquez was charged with conspiring to sell and selling cocaine to the three co-defendants. Otero's statement after the sale had been consummated that the cocaine belonged to him was not inconsistent with Marquez's guilt and was, therefore, not exculpatory as to Marquez. We reach the same conclusion with respect to Rivero. His defense that he did not know the package contained cocaine was effectively refuted by the evidence presented at trial. It was Rivero who fetched the envelope containing the $2,600 from the Falcon and handed it to Marquez. When Otero tore open the package, Rivero was present to see the contents. Moreover, it was Rivero who then placed the package in the Falcon. Rivero also had been observed two days earlier delivering packages wrapped in the same multicolored paper to two bars in Queens. Finally, when the agents stopped the Ford Falcon a short distance from the scene of the narcotics transaction and arrested

3. Rivero also argues that Otero's statement was admissible under Brady v. Maryland, 373 U.S. 83 (1963), since the rationale of *Brady* would be meaningless if evidence favorable to a defendant, and material to the issue of his guilt, was excluded because of a rule of evidence. However, merely because exculpatory evidence known to the prosecutor must be given to the defendant does not necessarily mean that the evidence is admissible at trial. In *Brady, supra*, 373 U.S. at 90, the Supreme Court held that Brady was not entitled to a new trial on the issue of guilt, apparently because the suppressed statement would not have been admissible at the original trial on the issue of Brady's guilt. See *Brady, supra*, 373 U.S. at 83 (Harlan, J., dissenting).

Rivero, Otero and Garcia, Rivero reached into his belt for a revolver, which the officers had to restrain him from drawing. In view of these circumstances, we can say with fair assurance that the jury was not swayed by the exclusion of Otero's statement "cocaine mine". Kotteakos v. United States, 328 U.S. 750, 765 (1946).

■ Appellants also contend that two remarks made by the prosecutor during his summation deprived them of a fair trial. First, appellants claim that it was improper for the prosecutor to argue that there might have been "an arrangement whereby Otero would flee so that the others could put the blame on him." Appellants' contention that this statement was inflammatory and unsupported by the evidence must be assessed in light of defense counsel's argument during Rivero's summation that Otero fled because he alone was guilty. Under these circumstances, the prosecutor's comment about Otero's flight was fair reply. Secondly, appellants maintain that they were denied a fair trial by the prosecutor's attempt to bolster the credibility of the police officers by arguing that "they are government officers and they know what the meaning of an oath is because they have taken an oath themselves to get their jobs. . . ." While we have admonished prosecutors not to engage in this type of argument, see United States v. Briggs, 457 F.2d 908, 912 (2 Cir. 1972), and cases there cited, appellants here failed to object to this statement either during the government's summation or at its conclusion outside the presence of the jury. There being no plain error, appellants' failure to raise this claim below precludes them from raising it on appeal. See United States v. Briggs, *supra*, 457 F.2d at 911–12; United States v. Deutsch, 451 F.2d 98, 117 (2 Cir.1971), cert. denied, 404 U.S. 1019 (1972).

■ Finally, Rivero contends that the indictment must be dismissed because the government misled the grand jury.[4] Rivero did not raise this claim in the district court. His failure to make this argument in a timely fashion constitutes a waiver of his objections to the indictment. See United States v. Grant, 462 F.2d 28, 32 (2 Cir.1972); 1 Wright, Federal Practice and Procedure 406–07 (1969).

■ In any event, there is no merit to Rivero's objections to the grand jury proceedings. Rivero contends that Detective Campbell, one of the officers who observed the narcotics transaction, failed to tell the grand jury that observations reported by him were in fact made by another officer. However, as we said in United States v. Liebowitz, 420 F.2d 39, 42 (2 Cir.1969), dismissal of the indictment will be considered only if "the grand jury is misled into thinking it is getting eye-witness testimony from the agent whereas it is actually being given an account whose hearsay nature is concealed . . . [or] the defendant could show that there is a high probability that with eye-witness rather than hearsay testimony the grand jury would not have indicted." See also United States v. Fernandez, 456 F.2d 638, 641 (2 Cir.1972), and cases there cited. An examination of the record indicates that neither of these conditions is met here. Moreover, that Detective Campbell erred in telling the grand jury that the other officer, Patrolman DeRosa, observed the transaction from behind the glass doors of a hotel does not carry the day for appellants. This error favored appellants since DeRosa actually had been closer to the transaction than Campbell's grand jury testimony indicated. Furthermore, there was more than sufficient unchallenged, competent testimony for the grand jury to find probable cause to indict appellants.

Affirmed.

---

4. Rivero also contends that the grand jury should have been told of Otero's statement to the Assistant United States Attorney. Rivero, however, is unable to cite a single authority to support this claim. In any event, the government presented ample evidence to support the indictment.