UNITED STATES of America, Appellee,

v.

Jose FIGUEROA, Angel Lebron, and Ralph Acosta, Appellants.

Nos. 244 to 246, Dockets 79–1188 to 79–1190.

United States Court of Appeals, Second Circuit.

Argued Sept. 26, 1979.

Decided Feb. 26, 1980.

Steven L. Barrett, New York City (Federal Defender Services Unit, on brief), for appellant Lebron.

Kenneth J. Kaplan, New York City (Robert F. Katzberg, Kaplan & Katzberg, New York City, on the brief), for appellant Acosta.

Frank Ortiz, Brooklyn, N. Y., on brief, for appellant Figueroa.

Reena Raggi, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., Mary McGowan Davis, Asst. U. S. Atty., Brooklyn, N. Y., on brief), for appellee.

Before MOORE, OAKES, and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

This criminal appeal concerns primarily the admissibility of prior crime evidence in a multi-defendant trial. Jose Figueroa, Angel Lebron, and Ralph Acosta were convicted after a two-day trial in the United States District Court for the Eastern District of New York (Thomas C. Platt, Jr., Judge) upon jury verdicts finding them guilty of conspiracy to possess and distribute heroin in violation of 21 U.S.C. § 846 (1976) and the substantive offense of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1976).

The Government's evidence disclosed the following. On October 5, 1978, an informant of the Drug Enforcement Administration (DEA) placed two telephone calls from a DEA office to Figueroa. In these calls the informant arranged for the purchase of eight ounces of heroin. The conversations, conducted in Spanish, were tape recorded by a DEA agent with the informant's consent, and translated transcripts were introduced into evidence only against Figueroa.

Later that day, DEA agent Victor Aponte accompanied the informant to a meeting with Figueroa. Figueroa discussed the proposed transaction with Aponte, counted the $8,500 that Aponte displayed, and agreed to take Aponte to the place where the heroin was kept. After the group was joined by Lebron and Acosta, Aponte was told that they were going to "La Teresa," a social club managed by Lebron. Aponte drove to the club while the others proceeded on foot. Upon entering the club, which was located on the second floor of a building, Acosta looked out the window and told Lebron that everything was clear. Lebron then went into the club's bar area and emerged with a brown paper bag, which Lebron, accompanied by Aponte and the informant, took into an office. There, Lebron emptied eight cellophane packets from the paper bag onto a desk. Aponte opened one of the packets and noted a brown powdery substance with a vinegar-like odor, which he concluded was brown rock heroin.

Aponte told Lebron he wished to conclude the deal outside the club. He left to get the $8,500 from his car, instructing Lebron to have Acosta meet him with the heroin outside the building entrance. Returning from his car, Aponte saw Acosta outside the building, next to the informant. The informant had taken off his coat, a pre-arranged signal that the person next to him was carrying heroin. Aponte testified he could see a portion of the brown paper bag sticking out of Acosta's jeans pocket and could see the outline of some of the cellophane packets inside the bag, which was inside the pocket. Aponte asked Acosta if they were going ahead with the deal and was told no. When Acosta began to walk away, Aponte went to his car to pursue him. Finding Acosta on a nearby street, Aponte got out of his car and identified himself as a police officer. According to Aponte, Acosta then reached into the pocket that contained the brown paper bag. As Aponte grabbed Acosta and wrestled him to the ground, Acosta pulled the bag out of his pocket and threw it into a crowd of passers-by who had gathered to watch the arrest. The bag and its contents were never found.

For virtually all the critical events—the conversations concerning heroin, Lebron's display of the heroin, and Acosta's throwing the paper bag on the street, the only witness was Aponte. Only the fact of the two telephone calls and the identification of the voices of the informant and Figueroa on the tape recordings were testified to by another DEA agent. The informant was identified by name, and his last known address disclosed, but he was not located by either side and did not testify. The defendants called no witnesses.

The principal claim of all three appellants concerns the introduction into evidence of a 1968 conviction of Acosta for selling heroin. Since that claim presents different issues with respect to Acosta and his co-defendants, separate consideration is required.

### Acosta

█ In a series of recent cases, this Court has endeavored to clarify the standards that apply and the procedure to be

followed when the Government offers evidence of a defendant's similar crimes or acts. To be admissible the evidence must be relevant to some disputed issue in the trial, Fed.R.Evid. 404(b), and its probative value must not be substantially outweighed by the risk of unfair prejudice. Fed.R.Evid. 403; *United States v. Mohel*, 604 F.2d 748 (2d Cir. 1979); *United States v. Lyles*, 593 F.2d 182 (2d Cir. 1979); *United States v. Manafzadeh*, 592 F.2d 81 (2d Cir. 1979); *United States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978); *United States v. DeVaugn*, 579 F.2d 225 (2d Cir. 1978); *United States. v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978). The procedure for determining admissibility depends on the grounds on which the Government offers the evidence. If the evidence is offered to prove that the defendant committed the act charged in the indictment, for example, by proving identity or common scheme, the evidence may be offered during the prosecution's case-in-chief, unless the defendant's commission of the act is not a disputed issue. On the other hand, if the evidence is offered to prove the defendant's knowledge or intent, the offer of similar acts evidence should await the conclusion of the defendant's case and should be aimed at a specifically identified issue. This enables the trial judge to determine whether the issue sought to be proved by the evidence is really in dispute

and, if so, to assess the probative worth of the evidence on this issue against its prejudicial effect. *United States v. Danzey*, 594 F.2d 905 (2d Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979); *United States v. Halper*, 590 F.2d 422 (2d Cir. 1978); *United States v.˙ Benedetto, supra; United States v. Leonard*, 524 F.2d 1076, 1092 (2d Cir. 1975), *cert. denied*, 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976).

Despite the frequency with which these principles have been expressed and the reversals that have occurred when they have not been followed, *United States v. Mohel, supra; United States v. Manafzadeh, supra; United States v. O'Connor, supra; United States v. DeVaugn, supra*, the Government persists in jeopardizing convictions by offering evidence of similar crimes or acts either in disregard of the standards or without assisting the trial judge to make sure that they are correctly applied.

In this case, the Government offered evidence of defendant Acosta's 1968 conviction for sale of narcotics. The offer was made at the conclusion of the prosecution's case-in-chief, but before it had been ascertained that the defendants would rest without presenting evidence.[1] More significantly, the prosecutor neglected to inform the trial judge of the issue to which the evidence was claimed to be relevant.[2] When Acosta's counsel then endeavored to oppose the

---

1. Since the defendants rested without presenting evidence, the slightly premature timing of the offer of the similar act evidence was of no consequence here. *See United States v. Williams*, 577 F.2d 188 (2d Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). Defendants frequently do not disclose whether there will be a defense case until the prosecution has rested its case. Consequently, the safer course in offering similar act evidence that should normally await the prosecution's rebuttal case, *see United States v. Danzey, supra*, is for the prosecution to rest, reserving, out of the presence of the jury, the right to reopen to present such evidence in the event the defendants rest without introducing evidence. If that occurs, and the evidence is subsequently admitted, the trial judge can inform the jury that court procedure obliged the prosecution to defer its similar act evidence, thereby avoiding any unwarranted inference that the prosecution was desperately using a last-minute tactic.

2. This Circuit's use of the inclusionary approach to similar act evidence does not obviate the need to identify the fact or issue to which the evidence is relevant. All evidence objected to on relevancy grounds must be claimed to prove some fact or issue "of consequence to the determination of the action." Fed.R.Evid. 401. The exclusionary approach to similar act evidence obliges the trial court to determine whether the issue sought to be proved is among the traditional exceptions to the rule barring prior act evidence; the inclusionary approach permits the evidence to be used to prove any issue other than propensity, but the trial court is still obliged to ask, "Is the evidence in any way relevant to a fact in issue otherwise than by merely showing propensity?" Stone, *The Rule of Exclusion of Similar Fact Evidence: America*, 51 Harv.L.Rev. 988, 1004 (1938).

offer because of both its timing and inadmissibility, the trial judge undertook to suggest a basis for admissibility. Referring to an issue raised during the cross-examination of Agent Aponte as to whether the evidence that Lebron had displayed to Aponte was really heroin, Judge Platt observed: "[W]hen there is a question here of the substance and you all challenged the substance I would think the evidence was highly probative that this man has been convicted of the prior sale of the very substance." (Tr. 230).

Contrary to Judge Platt's suggestion, the issue as to whether the substance was heroin had been raised in the cross-examination of Aponte only by counsel for Lebron and Figueroa, and not by counsel for Acosta. Figueroa's lawyer had initially probed Aponte's training and other qualifications for identifying narcotic substances. He then asked Aponte whether the substance looked like coffee grains or like instant coffee and received negative answers. It appears that one purpose of these inquiries was to attack Aponte's credibility by confronting him with his grand jury testimony. In describing brown Mexican heroin to the grand jury and comparing it to white heroin from France, Aponte had said that the brown heroin "looks like Maxim Coffee. . . . . It has that appearance" (Tr. 130). Figueroa's lawyer not only pressed Aponte on the inconsistency but also used Aponte's comparison to coffee as the basis for suggesting that the substance may not have been heroin. When Aponte maintained that the substance was identifiable as heroin in part because of its vinegary odor, Figueroa's counsel asked whether Aponte had ever seen "brown sugar that was submerged in vinegar?" (Tr. 137). Lebron's lawyer pursued the point more directly with two questions: "Is it fair to say that on occasion substances are sold as narcotics which are not, in fact, narcotics?" and "Is it fair to say that people are constantly ripping each other off?" (Tr. 146). Aponte agreed that this occurs. By contrast, Acosta's lawyer asked no questions suggesting that the substance was coffee or anything other than heroin.

Confronted with Judge Platt's suggestion that the prior crime evidence was admissible because of a defense suggestion that the substance may not have been heroin, Acosta's counsel responded, "That is not my position. . . . I have never taken the position that these were coffee grinds. . . I have never taken a position, nor will I take the position that my man was involved in any plan, in any ripoff . . . ." (Tr. 231). Acosta's counsel made clear that his defense was denial that the alleged conduct of his client had occurred at all. He did not claim that Acosta threw away something other than heroin nor did he claim that Acosta threw away heroin, unaware of what it was. He claimed that Aponte was fabricating the episode alleged to have occurred on the street. When Judge Platt insisted that the issue was "whether there was an intent to deal in narcotics here or whether there was an intent to deal in coffee grinds or some other brown substance," (Tr. 234), Acosta's counsel unequivocally stated, "There is no issue of intent." (Tr. 235).

■ It was error to admit Acosta's prior conviction. His counsel's cross-examination had raised no issue concerning his intent, and his counsel had sufficiently removed that issue from the case. The Government has things backwards when it depicts Acosta as "on the one hand enjoying the benefit of a defense of lack of intent because it was raised by a co-defendant, but on the other hand seeking to exclude relevant evidence of a past conviction simply by stating that he, after all, was not the one raising the defense." (Appellee's Br. 17). It is the Government that is trying to enjoy the benefit of having put Acosta on trial with two co-defendants and then offering evidence against him on grounds available, if at all, only as to his co-defendants. The advantages to the prosecution of a joint trial do not include that maneuver. *Cf. United States v. DeCicco*, 435 F.2d 478, 483 (2d Cir. 1970) (condemning prosecution's evidence of a defendant's prior similar act as a basis for inferring the intent of a co-defendant).

Moreover, Acosta's prior conviction would not have been admissible even if he had been claiming that the Government's evidence proved at most a "rip-off," *i. e.,* a sale of a substance the defendants knew was not heroin. Evidence of similar acts or crimes is relevant to the issue of intent, not to the issue of the nature of the substance that was in the cellophane bag. No one in the case claimed that the trio was unwittingly selling Aponte heroin, thinking it was some other substance. Their point was that the prosecution had failed to prove what was in the bag, not what was in their minds. While the prosecution is entitled to prove that a substance is heroin without producing either the substance or a chemical analysis, *United States v. Bermudez,* 526 F.2d 89 (2d Cir. 1975), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976), defendants are entitled to question the persuasiveness of whatever evidence is presented. But such probing puts in issue only the true nature of the substance, not what the defendants intended or knew it to be.

Having failed to specify at the time the prior crime evidence was offered the issue it tended to prove, the Government on appeal advances a theory of admissibility other than the one relied upon by the District Court. The Government now suggests that cross-examination by Acosta's counsel created an issue as to whether Acosta intended to join the conspiracy alleged to have existed between Figueroa and Lebron. While Acosta's principal line of defense was that Aponte's entire account of the events of October 5 was not to be believed, his counsel did elicit on cross-examination Aponte's acknowledgment that when, according to Aponte's version, Lebron displayed the cellophane packets inside the office of the social club, Acosta was not in the office, and that Aponte never discussed price or quantity with Acosta.

There is an ambiguity as to whether this brief cross-examination was designed to show only that Acosta had taken no action to join the conspiracy or also to show that regardless of Acosta's acts, he was unaware of the nature of the conspiracy and did not intend to join it. Judge Platt at one point suggested that the latter point was being pressed. As he suggested to Acosta's counsel, "On the basis of your whole case the presentation so far has been it's a mistake or accident or other innocent reason that your man happened to be around." (Tr. 232). Acosta's counsel responded, "It is not a mistake or accident . . . . I am saying and I have taken the position throughout that this didn't happen." (Tr. 232–34). This renewal of Acosta's basic denial of the whole episode appears to have satisfied Judge Platt, who then discussed with counsel and ultimately relied upon the theory that Acosta was challenging the nature of the substance in the bag.

In *United States v. Williams,* 577 F.2d 188, 192 (2d Cir.), *cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978), this Court ruled that a prior conviction was properly admitted on the issue of intent where counsel had argued that the defendant had not attended a crucial meeting and that, even if he had been present, his attendance did not constitute intentional participation in the conspiracy. No such alternative argument was advanced by counsel for Acosta. On the contrary, he represented to Judge Platt that there was no claim of accident or mistake and that intent was not an issue in the case.

Finally, the Government contends that Acosta's counsel had not indicated with sufficient definiteness that intent was not a disputed issue in Acosta's case. The decisions in this Circuit have used various expressions to describe when a dispute concerning an issue has been sufficiently removed to bar use of similar act evidence. Thus, the question has been stated to be whether an issue like intent is "really in dispute," *United States v. Williams, supra,* 577 F.2d at 191; *United States v. Benedetto, supra,* 571 F.2d at 1249, or "truly in dispute," *United States v. O'Connor, supra,* 580 F.2d at 43, or whether the defendant has "affirmatively take[n] the issue of intent out of the case," *United States v. Williams, supra,* 577 F.2d at 191, or "offered to

stipulate" to the requisite intent, *United States v. Manafzadeh, supra*, 592 F.2d at 85, or made "an unequivocal concession of the element," *United States v. Mohel, supra*, 604 F.2d at 754.

■ Whether an issue remains sufficiently in dispute for similar acts evidence to be material and hence admissible, unless the prejudicial effect of the evidence substantially outweighs its probative value, depends not on the form of words used by counsel but on the consequences that the trial court may properly attach to those words. When the Government offers prior act evidence to prove an issue, counsel must express a decision not to dispute that issue with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed. See *United States v. Mohel, supra*, 604 F.2d at 754. While those consequences can be attached to a formal stipulation that the issue has been conceded, a formal stipulation is not required or necessarily appropriate. With respect to intent, defense counsel will understandably be reluctant to tell the jury that while he contends his client was not present, he concedes that if he had been present, he had the requisite intent. The conditional nature of such a stipulation may easily be misunderstood. That risk is substantially lessened if the matter is handled by the trial judge in the jury instructions.

■ Despite the prosecution's failure in this case to identify the issue to which Acosta's prior conviction was material, Acosta's counsel clearly stated that he was not disputing the issues suggested by the trial court as providing the basis for admissibility, primarily intent. Counsel's disclaimers were repeated and emphatic, and, had they been relied upon to exclude Acosta's conviction would have justified preclusion of cross-examination and argument on intent and supported an instruction taking the issue out of Acosta's case. In these circumstances, it was error to admit Acosta's prior conviction.

■ The trial court also erred in failing to determine whether the probative value of the evidence was "substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. Initially, it appears that after the judge identified intent as the issue to which he believed Acosta's conviction was material, there was inadequate consideration of the probative value of the evidence. The judge noted that under Rule 609 a prior conviction offered to impeach a witness's credibility may be more readily admitted if the witness's incarceration ended no more than ten years prior to the trial.[3] The judge ascertained that Acosta's incarceration for his conviction had ended at a point just within the ten-year period prior to the trial. Apparently purporting to analogize from Rule 609, the judge considered the prior conviction to have sufficient probative value simply because it satisfied the ten-year provision of Rule 609. But both Rule 609 and Rule 403, which is pertinent here, oblige the trial court to assess the probative value of every prior conviction offered in evidence and the remoteness of a conviction, whatever its age, is always pertinent to this assessment. Satisfying the ten-year provision of Rule 609 does not justify the automatic admission of a prior conviction under that rule nor assure that it has the requisite probative value under Rule 403.

More significantly, the trial judge failed to consider the risk of unfair prejudice and to balance this risk against probative value. Judge Platt expressed the not uncommon

---

**3.** Under Rule 609, the ten-year age of a prior conviction alters the balance to be made in determining admissibility. Convictions within ten years, not involving falsity, are admissible to impeach credibility if the probative value of the conviction outweighs its prejudicial effect. For convictions older than ten years admissibility requires a determination "in the interests of justice" that the probative value of the conviction "substantially" outweighs its prejudicial effect. Fed.R.Evid. 609(b).

misconception that "Everything that is introduced against a defendant in a criminal case is prejudicial,"[4] and then said of Acosta's prior conviction, "The sole question is its probative value." (Tr. 239).

All evidence introduced against a defendant, if material to an issue in the case, tends to prove guilt, but is not necessarily prejudicial in any sense that matters to the rules of evidence. See *United States v. Briggs*, 457 F.2d 908, 911 (2d Cir.), *cert. denied*, 409 U.S. 986, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972). Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence. See Advisory Committee Note to Rule 403; S. Saltzburg and K. Redden, Federal Rules of Evidence Manual 43 (2d ed. 1978 Supp.). The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant. A prior conviction is material to a defendant's intent (when intent is in issue), but it is also prejudicial to the extent that it also tends to prove a defendant's propensity to commit crimes. When material evidence has an additional prejudicial effect, Rule 403 requires the trial court to make a conscientious assessment of whether the probative value of the evidence on a disputed issue in the case is substantially outweighed by the prejudicial tendency of the evidence to have some other adverse effect upon the defendant.

In assessing the risk of prejudice against the defendant, the trial court should carefully consider the likely effectiveness of a cautionary instruction that tries to limit the jury's consideration of the evidence to the purpose for which it is admissible. Whatever the criticism of such instructions,[5] they remain an accepted part of our present trial system. However, while their utility is not to be invariably rejected, neither should it be invariably accepted. When a prior conviction, not involving falsity, is offered to impeach the credibility of a defendant who testifies, the Federal Rules of Evidence require the trial judge to assess whether "the probative value of admitting this evidence outweighs its prejudicial effect to the defendant." Fed. R.Evid. 609(a). If an instruction limiting consideration of the conviction to the issue of credibility always sufficed to insure requisite fairness, there would be no need to make the balance mandated by Rule 609(a). Similarly, the balancing required by Rule 403 for all evidence would not be needed if a limiting instruction always insured that the jury would consider the evidence only for the purpose for which it was admitted. Giving the instruction may lessen but does not invariably eliminate the risk of prejudice notwithstanding the instruction. Rule 403 balancing must therefore take into account the likelihood that the limiting instruction will be observed. This involves no burden upon the conduct of the trial. No jury inquiry is required or appropriate. The trial judge, sensitive to the realities of the courtroom context as in all other trial rulings, must simply include a sound estimate of the likely force of limiting instructions in the overall Rule 403 determination.

Some cases have gone far toward assuming that the trial court tacitly made the balance required by Rule 403. See, e. g., *United States v. Hayes*, 553 F.2d 824, 828

---

4. In *Dollar v. Long Mfg., N.C.*, 561 F.2d 613, 618 (5th Cir. 1977), the Fifth Circuit also maintained that all material evidence is prejudicial and suggested that for this reason Rule 403 refers to "unfair" prejudice as the factor to be weighed against probative value. However, the Advisory Committee Note to Rule 403 defines "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." This makes clear that "unfair" refers to the degree of prejudice and that "prejudi-

cial" evidence is not simply all material evidence, nor everything introduced against a defendant.

5. *See Krulewitch v. United States*, 336 U.S. 440, 454, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring); *Blumenthal v. United States*, 332 U.S. 539, 559, 68 S.Ct. 248, 257, 92 L.Ed. 154 (1947). *United States v. Antonelli Fireworks Co.*, 155 F.2d 631, 642–46 (2d Cir. 1946) (Frank, J., dissenting).

(2d Cir.), *cert. denied*, 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977). No such assumption can be made here where the trial court explicitly identified as the "sole question" the "probative value" of the evidence.

 Erroneous admission of a defendant's prior conviction normally warrants a new trial, *United States v. Rinaldi*, 301 F.2d 576 (2d Cir. 1962), and there is no basis for escaping that conclusion here. The case against Acosta rested entirely on the testimony of Aponte, whose credibility was a seriously contested issue in the trial. The impact upon Acosta of the introduction of his prior narcotics conviction may well have been decisive to the outcome of the jury's deliberation. It is inconceivable that knowledge of Acosta's prior conviction did not play some significant part in the decision of at least some of the jurors to find Aponte's accusations of Acosta credible.

### Lebron and Figueroa

Whether the erroneous admission of Acosta's prior conviction warrants relief for his co-defendants presents a closer question, one that requires analysis somewhat different than the one that suffices for Acosta's appeal. We do well to bear in mind the wise counsel of the late Judge Gurfein: "There are few areas in which it is as important for this court to keep a watchful eye as on the admissibility of similar offenses in a case involving more than a single defendant." *United States v. Rosenwasser*, 550 F.2d 806, 814 (2d Cir.) (dissenting opinion), *cert. denied*, 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83 (1977).

 All multi-defendant trials present difficult problems of trial management and inevitably "furnish inherent opportunities for unfairness." *Spencer v. Texas*, 385 U.S. 554, 562, 87 S.Ct. 648, 652, 17 L.Ed.2d 606 (1967). Courts have been willing to accept the risks of some adverse effects upon co-defendants in order to secure the public benefits of savings in costs, time, and judicial resources and of reduced burdens on disinterested witnesses. See, *e. g., United States v. McLaurin*, 557 F.2d 1064, 1074 (5th Cir. 1977), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 743, 54 L.Ed.2d 767 (1978). It is well established that a defendant cannot avoid the risks of a joint trial simply because he might have a better chance of acquittal in a separate trial. *United States v. Stirling*, 571 F.2d 708, 733 (2d Cir.), *cert. denied*, 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978); *United States v. Bubar*, 567 F.2d 192, 205 (2d Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977). But there are limits to the risks a co-defendant must endure.

 When evidence is offered against one defendant in a joint trial, determination of admissibility against that defendant resolves only the Rule 403 balancing as to him, *i. e.*, that the probative value of the evidence in *his* "case" is not substantially outweighed by unfair prejudice to *him*. But if the evidence creates a significant risk of prejudice to the co-defendants, a further issue arises as to whether the evidence is admissible *in a joint trial*, even though limited by cautionary instructions to the "case" of a single defendant. That issue can be considered either as a question of admissibility of evidence or severance. If the justification for a joint trial is outweighed by the prejudice to the co-defendants, the trial court can confront the prosecutor with the choice of forgoing either the evidence or the joint trial.[6] See *United*

---

**6.** Some items of evidence, like a confession that may violate *Bruton*, can be ruled upon before the jury is empaneled, *see* Fed.R.Crim.P. 14, in which event the prosecutor's choice of forgoing either the evidence or the joint trial raises no issue under the Double Jeopardy Clause. But when prior act evidence is offered during the course of a joint trial, both the defendant against whom the evidence is offered and the co-defendants who fear its prejudicial effect are protected by the Double Jeopardy Clause

against retrial following an involuntary severance. *United States v. Glover*, 506 F.2d 291 (2d Cir. 1974). However, if the prosecution prefers to proceed with the evidence and take the risk that the co-defendants facing prejudice will move for severance, their failure to do so will make their objection to the evidence unlikely to succeed on appeal.

In *Glover*, this Court held that the Double Jeopardy Clause barred retrial of a defendant who had been involuntarily severed in the

*States v. Glover*, 506 F.2d 291, 294 (2d Cir. 1974); *United States v. Truslow*, 530 F.2d 257 (4th Cir. 1975); *cf. Bruton v. United States*, 391 U.S. 123, 143–44, 88 S.Ct. 1620, 1631–1632, 20 L.Ed.2d 476 (1968) (White, J., dissenting). In view of the obvious advantages of a joint trial to the prosecution, and frequently to the public interest, it is safe to assume that on the few occasions when the problem arises, this choice will generally not mean less joint trials, only less use of prejudicial evidence in joint trials. Sometimes the evidence is admitted against one defendant, leaving the issue as to the co-defendants to be resolved solely under the severance standards of Fed.R.Crim.P. 14. See, *e. g., United States v. Mardian*, 178 U.S.App.D.C. 207, 211–215, 546 F.2d 973, 977–81 (D.C. Cir. 1976); *United States v. Marshall*, 458 F.2d 446, 451–52 (2d Cir. 1972); *United States v. Branker*, 395 F.2d 881, 887–89 (2d Cir. 1968), *cert. denied*, 393 U.S. 1029, 89 S.Ct. 639, 21 L.Ed.2d 573 (1969). But other cases have viewed the issue solely in terms of admissibility, *i. e.*, admissibility in a joint trial.

The leading Supreme Court decision reversing a co-defendant's conviction because of the effect of evidence offered and admitted solely against another defendant was decided on grounds of admissibility, not severance. In *Bruton v. United States, supra*, the prosecution introduced a confession in which defendant Evans had implicated both himself and his co-defendant Bruton. The trial judge had instructed the jury that the confession was admitted solely against Evans.[7] The Supreme Court reversed Bruton's conviction on the ground that the opportunity for the jury to consider Evans'· confession prejudiced Bruton, despite the limiting instructions, and that this prejudice occurred in violation of the Confrontation Clause of the Sixth Amendment. The issue in the case was solely whether Bruton's rights had been violated by the admission in the joint trial of evidence against Evans. Bruton had not moved for a severance. *Evans v. United States*, 375 F.2d 355, 361 (8th Cir. 1967). Similarly, in *United States v. Rosenwasser, supra*, this Court assessed, as a matter of admissibility, the prejudicial effect upon Rosenwasser of prior acts evidence that had been admitted solely against his co-defendant Allicino. While the majority concluded that the risk of prejudice did not warrant reversal, it analyzed the "close" question as one arising under Rule 403. 550 F.2d at 808.

In assessing the risk to a co-defendant of prejudice created by evidence admitted in a joint trial solely against another defendant, the trial court must balance interests somewhat differently than when it makes this assessment in the trial of one defendant. The trial judge must weigh not only the probative value and the risk of unfair prejudice to the defendant against whom the evidence is offered, but also the appropriateness of permitting the prosecution to introduce the evidence in a joint trial. Evidence that might be admissible under Rule 403 in a trial of one defendant is not inevitably admissible in a joint trial. In some situations the danger of unfair prejudice to co-defendants may be so great that the prosecution must be put to a choice of forgoing either the evidence or the joint trial. In other situations a lesser but still significant risk of prejudice may also war-

---

midst of a joint trial to prevent evidence admissible against him from prejudicing his co-defendants. Placing co-defendants in the position of "electing" to move for severance or suffering the prejudicial effect of evidence admitted against another defendant raises an issue as to the voluntariness of the motion, but the situation is readily distinguishable from *Glover*. The rationale of *Glover* was that retrial violated the Double Jeopardy Clause because it did not provide the involuntarily severed defendant with any advantage, but merely helped his co-defendants and the Government. When co-defendants successfully move for severance to avoid the prejudicial effect of evidence admitted against another defendant, they secure a distinct advantage to themselves.

7. The aftermath of that trial court ruling is not without interest. The Court of Appeals held the confession erroneously admitted against Evans on the ground that it was tainted by prior unlawful interrogation. *Evans v. United States*, 375 U.S. 355 (8th Cir. 1967). On retrial, Evans was acquitted. *See Bruton v. United States, supra*, 391 U.S. at 124 n.1, 88 S.Ct. at 1621.

rant an election by the Government if the public advantages of a joint trial are slight owing to the brevity of the trial. While a co-defendant is obliged to accept some risk of prejudice because of the public advantages of a joint trial, he ought not to be exposed to much risk in a case where the reasons that justify the joint trial are not significant. See *United States v. Mardian, supra*, 546 F.2d at 980–81.

■■■■■ As with the balancing required in the trial of one defendant, admissibility of prior act evidence in a joint trial requires consideration of the likely effectiveness of the cautionary instruction that tries to eliminate the prejudice to the co-defendant by limiting the jury's consideration of the evidence to the defendant against whom it is offered. See *United States v. Rosenwasser, supra*, Advisory Committee Note to Rule 403. Unlike a *Bruton* confession, prior act evidence is not so inevitably prejudicial to co-defendants that the worth of limiting instructions can be totally discounted. However, as with the defendant against whom the evidence is offered, limiting instructions cannot be regarded as a guaranty against prejudice; the risk of prejudice to co-defendants despite limiting instructions has been specifically noted by this Court. *United States v. Zane*, 495 F.2d 683, 694 (2d Cir. 1974).

■■■■■ The extent of the prejudice to a co-defendant from evidence of one defendant's prior acts depends on an assessment of how that evidence might affect the jury's consideration of a co-defendant's guilt, despite limiting instructions. Of course, all prior acts evidence that tends to prove the guilt of one defendant might be viewed by the jury as bearing to some extent on the guilt of co-defendants if the jury thought that the correctness of the prosecution's accusation against one defendant supported an inference that the prosecution may also be correct in its accusation against co-defendants. But that possible inference is far too tenuous to bar admissibility of evidence in a joint trial. An arguably more likely risk of prejudice might arise if the jury were simply to draw an adverse inference against the co-defendants because of their association with a defendant shown to have a prior criminal record. That risk also seems too insubstantial in most circumstances to survive forceful instructions. At the other extreme is the high risk of prejudice to co-defendants when evidence of a defendant's prior act, like a *Bruton* confession, tends to prove directly, or even by strong implication, that the co-defendants also participated in the prior act. That was the risk that made the issue of admissibility a close question in *United States v. Rosenwasser, supra*.[8]

The risk of prejudice to Lebron and Figueroa in this case falls somewhere between these extremes. There is no suggestion that they were involved in Acosta's prior criminal activity. However, the possibility that the jury might infer their guilt because of the enhanced likelihood of Acosta's guilt rests on more than a general inference from the correctness of the prosecution's accusation against one defendant. In this case all the evidence that the defendants actually dealt in heroin came from the testimony of Agent Aponte, and all sides agreed that the essential issue for the jury was Aponte's credibility.[9] There was no suggestion that he had any reason to fabricate or even embellish his testimony more to the detriment of any one defendant than the others. Thus, if the jury inferred from Acosta's 1968 narcotics conviction that

8. The majority in *Rosenwasser* did not doubt that implication of the co-defendant in the prior crime of the defendant would pose a substantial risk of prejudice. It simply differed with Judge Gurfein as to whether the implication of the co-defendant in the defendant's prior act was sufficiently strong as to make limiting instructions ineffective. 550 F.2d at 808–09. The majority also doubted that prejudice had actually occurred in view of the co-defendant's acquittal on the conspiracy count. *Id.* at 809 n.7.

9. All three counsel urged the jury that Aponte was not a credible witness, and the prosecutor stated, "Now, ladies and gentlemen I submit to you that the question here is whether or not you believe Agent Aponte . . . ." (Tr. 279).

was dealing in heroin on October 5, 1978, they would have a substantial basis to cred-[it] Aponte, and a conclusion that Aponte was credible would assure the conviction of Lebron and Figueroa. In these circumstances it is doubtful whether the risk of prejudice to co-defendants can be adequately safeguarded by limiting instructions.

Had Acosta's prior conviction been admissible against him, the trial court would have faced the question as to whether the risk of prejudice to the co-defendants was sufficient to force the prosecution to choose between forgoing the evidence in a joint trial or using it against Acosta in a separate trial. However, in the present posture of the case, we do not have to decide whether use in a joint trial of prior act evidence admissible against Acosta would have been an abuse of the trial court's broad discretion. The issue for us is whether, in the circumstances of this case, the co-defendants are entitled to a new trial because of the risk of prejudice to them from prior crime evidence that was *not* admissible against Acosta.[10] We find that question close, but resolve it in favor of Lebron and Figueroa.

Several reasons lead us to this conclusion. As previously noted, the connection the jury could make between Acosta's inadmissible prior conviction and the guilt of the co-defendants was strong. The case turned on the credibility of one witness. The absence from evidence of heroin or a laboratory or field test, while not fatal, is of concern.[11] The trial lasted only two days, and retrial of Lebron and Figueroa would require in all likelihood the identical evidence that will be presented in a retrial of Acosta. Finally, there is a risk in this case that interventions and comments by the trial judge may have influenced the jury to deprecate defendants' attack on Aponte's credibility.[12]

10. Superficially, there may appear to be a paradox in permitting the co-defendants' claim of error to be enhanced by the circumstances that admission of the prior crime evidence against Acosta was erroneous. Admissibility in a joint trial will often turn on whether one defendant elects to contest a particular issue, a matter beyond the control of and sometimes of no concern whatever to the co-defendants, and the risk of prejudice to co-defendants is the same whether evidence is properly or erroneously admitted against another defendant. This apparent paradox is simply a consequence of the balancing that occurs whenever courts must determine whether the risk of some prejudice to co-defendants is justified by the societal advantages of a joint trial. Those advantages do not entitle the prosecution to the benefit of creating prejudice against co-defendants by introducing evidence that is inadmissible against the defendant in whose case it was offered. In assessing the consequences of the error, the balance of justified public benefit against prejudice is altered somewhat in the co-defendants' favor. Evidence erroneously admitted against one defendant will sometimes warrant a new trial for co-defendants because of its prejudicial effect upon them, even though that same effect might not justify retrial if the evidence was properly admitted. The risk of prejudice is constant; the justification for incurring that risk is reduced. Of course, the risk of some prejudice to co-defendants does not warrant reversal of their convictions whenever the evidence creating the prejudice is held inadmissible against another defendant. The risks of a joint trial include risk of some prejudice even from evidence that should not have been admitted.

11. The absence of heroin or a field test heightened the issue concerning both Aponte's credibility as to the existence of any substance and his opinion as to the nature of the substance he allegedly observed.

12. For example, defendants' counsel had sharply attacked Aponte's credibility by eliciting the fact that his sworn complaint contained the false allegation that Acosta had told Aponte that he (Acosta) was involved in heroin distribution with Lebron and Figueroa. Questioned about the complaint by Acosta's counsel, Aponte testified "The statement says that, but he never made that statement to me." (Tr. 202). There ensued this colloquy:

Q. When you signed this affidavit, I take it that you read the affidavit?
A. I should have.
Q. Are you now saying you didn't read the affidavit?
A. That *statement is not true and I signed* the statement.
Q. You signed a false statement?
A. Yes. (Tr. 203).

Then, in summation, the prosecutor endeavored to explain the falsity of the complaint by purporting to quote Aponte's trial testimony as follows: " 'It was a mistake, the complaint was drawn by a U.S. Attorney and I signed it *and I didn't read it* ——.' " (Emphasis added). When Acosta's counsel objected that this was not Aponte's testimony, the trial judge replied to

Nothing the trial judge did would alone warrant reversal, but what occurred adds to our concern that the jury's assessment of Aponte's credibility, already subject to improper influence because of Acosta's prior conviction, resulted in a verdict that ought not to stand.

The judgments of conviction against all three defendants are reversed and remanded for new trial.

MOORE, Circuit Judge (dissenting):

I dissent.

In this case, a jury, having had a full opportunity to see and hear the Government's key witness on whose credibility the outcome depended, found the defendants guilty beyond a reasonable doubt of trafficking in heroin. To prevent such traffic— or at least to try to discourage it—the Government spends millions of dollars. Despite the jury's opinion of guilt the majority speculates that their verdict *may* have been reached because of the introduction of an item of evidence against one of the defendants—an item quite collateral to the main issue. Thus, instead of adhering to the real issue, as charged in the indictment, of heroin trafficking, the majority poses the issue as: "This criminal appeal concerns primarily the admissibility of prior crime evidence in a multi-defendant trial". Starting with this hypothesis, the opinion discusses the disadvantages of multi-defendant trials, the effectiveness (or lack thereof) of jury instructions, and the spill-over effect of evidence admitted against one defendant on the others.

Interesting though these subjects be, the facts before us in simplified form are: A Drug Enforcement Administration (DEA) agent, Victor Aponte, arranged to buy heroin for $8,500 from the defendant Figueroa. They were joined by defendants Acosta and Lebron. Lebron produced a brown paper bag containing cellophane packets inside of which was a brown powdery substance with a vinegar-like odor. Aponte concluded that it was brown rock heroin. Shortly thereafter Acosta appeared on the street with a portion of the brown paper bag sticking out of his pocket. As Acosta walked away, Aponte pursued him to make the arrest. During the scuffle, Acosta threw the bag into the crowd of by-standers. Needless to say it was never retrieved. The record of the trial discloses more than sufficient evidence of the attempted heroin transaction and the defendants' participation therein.

The majority refers to the fact that "the only witness was Aponte", but many a multi-defendant narcotics case has been built around a single prime witness, and the jury was properly charged with determining Aponte's credibility.

However, on appeal the emphasis is turned by defense counsel—wisely as a matter of strategy—from guilt or innocence to collateral matters. As the majority phrases it, "The principal claim of all three appellants concerns the introduction into evidence of a 1968 conviction of Acosta for selling heroin". Yet this very statement would seem to be at odds with their conclusion as to Acosta that: "The case against Acosta rested entirely on the testimony of Aponte, whose credibility was a seriously contested issue in the trial". If this be so, of what importance is their speculation immediately following that: "The impact upon Acosta of the introduction of his prior narcotics conviction may well have been decisive to the outcome of the jury's deliberation". Scarcely, an attack on, or relevant to, Aponte's testimony.

The trial court gave a "specific limiting instruction" with respect to "the prior conviction of Mr. Acosta". The court said:

Acosta's counsel, "You yourself said that. The objection is overruled." (Tr. 351). In fact, Aponte had never claimed that he failed to read the affidavit he signed, and Acosta's counsel had never attributed such a remark to him. This unfortunate misstatement by the trial judge, understandably spoken in the haste of dealing with objections during summation, cre-

ated a substantial risk of undermining the defendants' attack on Aponte's credibility. Instead of being left neutrally to assess the force of defendants' attack on *Aponte's* credibility, the jury was incorrectly told by the judge that *defense counsel* was not to be believed with respect to a point that bore directly on Aponte's credibility.

"First, I caution you that that evidence was admissible against Mr. Acosta only and only against Mr. Acosta and not against the other defendants". The court continued: "The fact that the particular defendant may have committed another offense at some time is not any evidence or proof whatever that, at another later time, the accused committed the offense charged in the indictment, even though both offenses are of a like nature. Evidence as to an alleged earlier offense of a like nature may not, therefore, be considered by the jury, in determining whether the defendant did the act charged in the indictment." App. 388. In my opinion the jury could not have been more clearly instructed as to the restrictions placed upon them.

The majority satisfy themselves with placing the burden of jury compliance with the court's instructions on the trial court itself, saying: "The trial court should carefully consider the likely effectiveness of a cautionary instruction that tries to limit the jury's consideration of the evidence to the purpose for which it is admissible." This suggests interruptions by the trial court during the charge to inquire of each juror whether he or she understands the purpose for which the evidence has been introduced. Reference is made to the comment of that distinguished jurist, Mr. Justice Jackson, in *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949).[1] Fiction though it be, to tell a juror to disregard what he or she has just heard, as the majority concede, is still "an accepted part of our present trial system".

I next take issue with the majority's attack on the "joint trial" system and the suggestion that "the trial court can confront the prosecutor with the choice of forgoing either the evidence or the joint trial".

Practically all heroin prosecution cases are multi-defendant and many trials are of substantial duration. In almost all there are variations in the degree of guilt among the defendants. To say that "The trial judge must weigh not only the probative value and the risk of unfair prejudice to the defendant against whom the evidence is offered, but also the appropriateness of permitting the prosecution to introduce the evidence in a joint trial" is to assign to him the jury's function as well as to compel him to speculate as to any spill-over effect such evidence might have in the mind of any particular juror. The evil, if such it be, can easily be eliminated by a rule forbidding all joint trials but it should come from rule-making bodies—not appellate court decisions.

Nor do I agree that limiting instructions were inadequate to safeguard Figueroa and Lebron. Their guilt was clearly established quite apart from any reference to Acosta's previous conviction. In my opinion any spill-over effect as to Figueroa and Lebron was either of no effect or minimal.

If the majority opinion is intended to be a guide for prosecutors and trial judges, they will have to try to decipher and cope with it. To me implicit in the opinion is the thought that prosecutors and trial judges alike will try multi-defendant cases at their peril; that the trial judge will have to obtain the assurance of each juror that he or she understands the instructions and more importantly will in the deliberative process abide by them; that the use of a single informant is subject to risk; and that if the trial judge, after three or four weeks of trial, thinks some testimony might have an adverse "spill-over" effect on other defendants, he should declare a mistrial and order separate trials regardless of the possibility of double jeopardy. The problems of judges are sufficiently onerous now: I would not add additional burdens.

As to the issues before us on this appeal, namely, the sufficiency of the evidence, the limitation on the evidence introduced against Acosta, the fairness of the court's charge, and the propriety of a joint trial, I would affirm.

---

1. "The naive assumption that prejudicial effects can be overcome by instructions to the jury, *cf. Blumenthal v. United States*, 332 U.S. 539, 559, 68 S.Ct. 248, 257, 92 L.Ed. 154, all practicing lawyers know to be unmitigated fiction. See *Skidmore v. Baltimore & Ohio R. Co.*, 2 Cir., 167 F.2d 54." *Krulewitch*, 336 U.S. at 453, 69 S.Ct. at 723.